Argued March 6, affirmed July 27, 1972

## FRONTIER INSURANCE AGENCY, INC., *Respondent, v.* HARTFORD FIRE INSURANCE COMPANY, *Appellant,* and GILLESPIE DECALS, INC., *Respondent.*

499 P2d 1302

471

*Jack L. Hoffman,* Portland, argued the cause for appellant. On the briefs were Bullivant, Wright, Johnson, Pendergrass & Hoffman.

*Kenneth E. Roberts,* Portland, argued the cause for respondent Frontier Insurance Agency, Inc. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Gregory W. Byrne and Ridgway K. Foley, Jr.

*Paul 'L'Roy O'Connor,* Portland, argued the cause and filed a brief for respondent Gillespie Decals, Inc.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, and BRYSON,* Justices.

---

* Bryson, J., did not participate in this decision.

McALLISTER, J.

This is a declaratory judgment proceeding to determine the relative rights and liabilities between Hartford Fire Insurance Company, its agent, Frontier Insurance Agency, Inc., and its alleged insured, Gillespie Decals, Inc. The basic issue is whether Hartford is liable to Gillespie on an oral contract of insurance made by Frontier as Hartford's agent. The trial court found that Hartford was liable to Gillespie and that Hartford was not entitled to indemnity from Frontier. Hartford appeals. We affirm.

The controversy arose out of the following circumstances. Gillespie was in the printing business in Portland and prior to August 1968 its sole place of business was 1910 SW Stevenson Road. Frontier is an independent insurance agency which represents a number of insurance companies, including Hartford. For many years Frontier handled all of Gillespie's insurance business. On May 16, 1968, Hartford issued to Gillespie, through Frontier, its fire policy # 52 FS 155139 for a term of three years, insuring for the sum of $50,000 a stock of merchandise located at 1910 SW Stevenson Road.

In August 1968 Gillespie expanded its business into a second location at 1131 SE Umatilla Avenue. At that time Mr. Locke, Gillespie's General Manager, and Mr. Cheatham, Frontier's President, discussed the insurance changes necessary because of Gillespie's expansion into the additional location. It was agreed that the insurance coverage at the new location would include $50,000 fire insurance on the stock of merchandise and fire insurance on some new machinery, a Friden computer, and the accounts receivable records. All the new insurance was to be effective at the time

of the move in August 1968. Cheatham advised Gillespie that the stock of merchandise at the new location would be insured by adding the coverage to Hartford's policy # 52 FS 155139.

For some unexplained reason Frontier apparently made no effort to obtain the additional insurance for Gillespie until about March 1, 1969. At about that time Cheatham ordered from Hartford's Portland office a fire insurance policy covering the equipment at the new location, including the computer, and a new policy covering those items for $37,000 was issued by Hartford.

Although Frontier could order new policies from Hartford's Portland office, it was necessary that amendments to existing policies be ordered from Hartford's Seattle office. Cheatham testified that he sent a memorandum dated March 3, 1969, to Hartford's Seattle office requesting Hartford to amend policy # 52 FS 155139 to provide $50,000 fire coverage on the stock of merchandise at Gillespie's new location. Hartford contends that it never received the memorandum and therefore took no action to provide the insurance requested therein. Frontier did not follow up its request and no insurance was written on the Gillespie stock at the Umatilla Avenue location.

A fire on January 25, 1970, at the Umatilla location resulted in an estimated loss of $107,571.81. Hartford paid that portion of the loss covered by its policy on the machinery and computer, but refused to pay for the loss to the stock of merchandise, contending that it had written no insurance covering the merchandise at the Umatilla location. This proceeding was

thereafter brought by Frontier to determine the *inter se* rights and liabilities of the parties.

Frontier filed a "Complaint in Equity for Declaratory Decree and Judgment," naming Hartford and Gillespie as defendants. The complaint prayed for a declaration of the rights of all the parties, including a declaration that Frontier was not liable to either of the defendants, and for a decree reforming the insurance policy to include the merchandise at the Umatilla Street location up to $50,000. The complaint also prayed that Gillespie have a judgment against Hartford on the policy.

Although a similar procedure was employed in *Leavens v. Northwestern Mutual Ins.*, 249 Or 418, 439 P2d 17 (1968), and there has been no objection to the procedure in this case, we have doubts about Frontier's standing to assert Gillespie's rights against Hartford. However, Gillespie filed a cross-complaint alleging that Hartford, through its agent Frontier, agreed to provide the additional coverage under the existing policy, and sought a declaration of its rights against Hartford and a judgment on the policy. By this cross-complaint, which is authorized by ORS 16.315 (1) (a),[1] Gillespie seeks the same relief which Frontier sought on its behalf. In *Recall Bennett Com. v. Bennett,* 196 Or 299, 249 P2d 479 (1952) this court held that omissions in the complaint in a declaratory judgment proceeding

---

[1] "(1) In any action or suit where two or more parties are joined as defendants, any defendant may in his answer allege a cross-claim against any other defendant. A cross-claim asserted against a codefendant must be one existing in favor of the defendant asserting the cross-claim and against another defendant, between whom a separate judgment might be had in the action or suit and shall be:

"(a) One arising out of the occurrence or transaction set forth in the complaint; * * *."

were supplied by the allegations of a cross-complaint. The opinion quotes with approval the following from 1 Anderson, Declaratory Judgments § 306, p 707:

> " 'So, whether a complaint for a declaratory judgment states a cause of action is immaterial, where the defendant interposed a cross pleading tendering the same issues and a judgment thereon constitutes a complete adjudication of the rights of the parties since the defendant by tendering such counterclaim or cross-complaint became a plaintiff in effect and invoked the jurisdiction of the court and submitted to it.' " 196 Or at 320.

In the present case Gillespie has, by its cross-complaint, acquiesced in Frontier's choice of forum, and Hartford has made no objection to the procedure employed. We therefore consider the issues raised by the parties as properly before us, but do not intend to express our approval of the procedure employed here and in *Leavens* in which an insurance agent, in an attempt to forestall claims by a disappointed client, employs declaratory judgment procedures to assert the client's claims against the insurance company.

We next consider the scope of our review. Hartford contends that the case is in equity and that it is entitled to a review de novo. This depends on whether this is a suit in equity to reform Hartford's policy 52 FS 155139 or whether it is an action at law on an oral contract to insure by amending the above-numbered policy. We think the question is answered by the pleadings.

Frontier expressed the gravamen of its complaint in the following language:

> "That on or about the 3rd day of March, 1969, at the request of the defendant Gillespie Decals, Inc., the plaintiff [Frontier], acting on behalf and

as agent of the defendant Hartford Fire Insurance Company, bound and committed said company to a contract of fire insurance with the defendant Gillespie Decals, Inc. covering the contents of a second location at 1131 S. E. Umatilla Avenue, Portland, Oregon, in the sum of $50,000 and the said second location *to be added* to the aforesaid policy No. 52 FS 155139 *by endorsement*; * * *." (Emphasis supplied.)

In similar language Gillespie, in its cross-complaint, alleged that Frontier had agreed that Frontier would "issue an additional $50,000.00 stock coverage at the new location" with the defendant Hartford and that "a rider would be added to the present policy of insurance, or an endorsement thereon."

Instead of asking in the prayer of their pleadings that Hartford's policy 52 FS 155139 be amended by "endorsement" or "rider", both Frontier and Gillespie asked that the existing policy be reformed to provide the additional coverage. The use of the words "reform" and "reformation" in the pleadings in lieu of "amend" and "amendment" is the primary basis for Hartford's claim that this is a suit in equity and its claim for de novo review. Hartford also relies on the allegation in the complaint that equitable intervention is necessary to avoid a multiplicity of suits and circuity of actions.

██ Reformation, strictly speaking, is equitable relief which is appropriate when a writing, because of fraud or mutual mistake, incorrectly expresses the true intention of the parties. *Manning Lumber Co. v. Voget,* 188 Or 486, 497-498, 500, 216 P2d 674 (1950). It is obvious from the allegations of the complaint and cross-complaint that Frontier and Gillespie were not seeking reformation of the policy in the strict sense of

the term. The policy, when issued in May, 1968, expressed the intention of the parties, and it needed no reformation. In this case the court was asked, in effect, to enforce the written policy of insurance, as amended by oral agreement, to include additional coverage. An action at law supplies an entirely adequate remedy for the enforcement of such a contract. See *Bird v. Central Mfg. Ins. Co.*, 168 Or 1, 7, 120 P2d 753 (1942). Nor is the aid of equity necessary to avoid a multiplicity of suits. ORS 28.110 provides:

> "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, * * * *."

The court in a declaratory judgment proceeding has ample authority to determine the rights of all affected parties.

Hartford was in no way misled or prejudiced by the use of the word "reform" in the pleadings. It made no attempt to exclude evidence of the oral agreement to add new coverage to the existing policy, and was obviously prepared to meet the issues raised by the factual allegations in the complaint and cross-complaint. We believe Hartford recognized throughout this case that Frontier and Gillespie were not seeking "reformation" of the written policy. Under the circumstances, the incidental use of the word "reform" in the prayers of their pleadings was of no consequence.

■■ A declaratory judgment proceeding may be reviewed either as an action at law or as a suit in equity, depending upon its nature. *May v. Chicago Insurance Co.*, 260 Or 285, 291-292, 490 P2d 150, 153 (1971). A declaratory judgment proceeding which is in the

nature of an action on an insurance contract is treated as an action at law, and we are bound by the trial court's findings if they are supported by any substantial evidence. *Transamerica Ins. Co. v. Signal Ins. Co.,* 261 Or 390, 494 P2d 885, 886 (1972) ; *Falk v. Sul America Terrestres,* 255 Or 246, 465 P2d 714 (1970).

■ Hartford contends, however, that the trial court's special findings of fact were entered improperly and should be disregarded. ORS 17.431 provides:

"(1) Whenever any party appearing in a civil proceeding tried by the court, whether at law, in equity or otherwise, so demands prior to the commencement of the trial, the court shall make special findings of fact, and shall state separately its conclusions of law thereon.

"(2) In the absence of such a demand for special findings, the court may make either general or special findings.

"(3) Within 10 days after the court has made its decision, any special findings requested by any party, or proposed by the court, shall be served upon all other parties who have appeared in the case and shall be filed with the clerk; * * *."

No party requested special findings prior to trial. The trial was concluded on March 17, 1971, and on April 5, 1971, the court issued a letter opinion stating that judgment would be entered in favor of Frontier and Gillespie against Hartford. The opinion contains no directions for the preparation of findings and conclusions. On or about April 28, 1971, Frontier served and filed both a form of general findings and a form of special findings of fact and conclusions of law. After hearing objections and making slight changes, the trial court signed the special findings prepared by Frontier's counsel. Hartford contends that the court was without authority to sign the special findings because

they were not served and filed within 10 days of the court's announcement of its decision.

In *Maddox v. McHattan,* 111 Or 324, 329, 224 P 833, 226 P 427 (1924) it was held that a prior statute providing that the court's findings be filed during the term or within 20 days thereafter was directory rather than mandatory. In *Maddox* it was contended that the court, by failing to file its findings within the statutory period, lost jurisdiction to render judgment. Here it is simply argued that after the expiration of 10 days, the court has authority only to enter general findings. We do not believe the legislature intended to so limit the court's discretion. Subsection (5) of the statute provides for an extension of up to 30 days of the time for filing and serving special findings "upon the stipulation of the parties or for good cause shown." This provision obviously refers to findings proposed by a party who has made a timely demand for special findings. Where the court, in its discretion, decides to enter special findings, we believe they may be validly entered even though served and filed more than 10 days after the decision, at least, as in this case, where they were served and filed within the permissible extension period.

■ The trial court found that Frontier, as Hartford's agent, had authority to commit Hartford to insurance contracts, and that on or about March 3, 1969, Frontier committed Hartford to a contract of fire insurance covering the contents of Gillespie's new location, to be added by endorsement to policy 52 FS 155139. There is evidence to support both of these findings.

■ Hartford concedes that Frontier had at least apparent authority to commit the company to ad-

ditional coverage, but it contends that nevertheless it was entitled to a judgment in its favor as a matter of law. First, Hartford argues that because policy # 52 FS 155139 had more than a year to run after March 3, 1969, the contract for $50,000 additional coverage was a contract not to be performed within a year and was, therefore, unenforceable under the Statute of Frauds. ORS 41.580 (1). In *Osburn v. DeForce,* 122 Or 360, 257 P 685, 258 P 823 (1927), it was held that an oral modification of a written contract which was within the statute, because it was not to be performed within a year, was unenforceable. We do not believe the *Osburn* rule is applicable in this case because the original policy was not within the statute. That policy includes the provisions of the statutory fire insurance policy, including the following:

> "This policy shall be canceled at any time at the request of the insured, * * *. This policy may be canceled at any time by this company by giving to the insured a five days' written notice of cancellation * * *." ORS 743.636.

This cancellation provision means that neither party to the contract need be bound for more than a year. In *Bickel v. Wessinger,* 58 Or 98, 104, 113 P 34 (1911) the opinion states:

> "* * * It is only where the agreement shows by its terms or within the contemplation of the parties that it cannot be performed within a year that the statute intervenes."

In *Duniway v. Wiley,* 85 Or 86, 89, 166 P 45 (1917), the court said that a contract which is capable of performance within a year, even though performance within that time was not probable and was not expected, is not within the statute. See, also, *Southwell v. Beezley,* 5 Or 458, 463 (1875).

There is a division of authority as to whether a contract provision for termination at will, or upon the happening of a contingency which may occur within a year, takes a contract out of the Statute of Frauds. According to Williston, the majority of courts hold that it does not, but there is a strong minority position to the contrary. 3 Williston on Contracts 596 (3d ed 1960) § 498 A.

■ The cases following the majority position reason that termination of a contract, even though provided for by its terms, is not performance but merely excusable non-performance. See, e.g., *White v. Simplex Radio Co.*, 188 Ga 412, 3 SE2d 890 (1939); *Biest v. Ver Steeg Shoe Co.*, 97 Mo App 137, 70 SW 1081 (1902). Courts following the minority rule consider termination according to the terms of the contract to be a form of, or equivalent to, performance. See, e.g., *Dutton Dredge Co. v. United States Fidelity & Guar. Co.*, 136 Cal App 574, 29 P2d 316 (1934); *Johnston v. Bowersock*, 62 Kan 148, 61 P 740 (1900); *Blake v. Voight*, 134 NY 69, 31 NE 256 (1892); *Zion's Service Corporation v. Danielson*, 12 Utah 2d 369, 366 P2d 982 (1961). We believe the minority view is in harmony with the spirit of the decisions in this and other jurisdictions which hold that if, according to the terms of the contract, performance within a year is possible, the contract is not within the statute. In *Hopper v. Lennen & Mitchell*, 146 F2d 364, 368 (9th Cir 1944), 161 ALR 282, holding that an option to terminate a five year contract made the Statute of Frauds inapplicable, the court said:

"* * * the reason for the statutory rule is preserved, for at no time is appellee bound for a period greater than the prescribed limitation for oral contracts."

We hold that if a contract, otherwise to continue for more than a year, is by its own terms subject to termination within a year, it is not within the prohibition of the Statute of Frauds.[2]

■ Hartford also contends that there could be no coverage at the new location under the existing policy because that policy contained a clause entitled "AUTOMATIC SPRINKLER WARRANTY", and the Umatilla Street building did not have an automatic sprinkler system. The "AUTOMATIC SPRINKLER WARRANTY" reads as follows:

"THIS POLICY BEING WRITTEN AT A REDUCED RATE BASED ON THE PROTECTION OF THE PREMISES BY AN AUTOMATIC SPRINKLER SYSTEM, IT IS A CONDITION OF THIS POLICY THAT, SO FAR AS THE SPRINKLER SYSTEM AND THE WATER SUPPLY THEREFOR ARE UNDER THE CONTROL OF THE INSURED, DUE DILIGENCE SHALL BE USED BY THE INSURED TO MAINTAIN THEM IN COMPLETE WORKING

---

[2] In Salquist v. Oregon Fire Relief Assn., 100 Or 416, 197 P 312 (1921) the court held that under the statutes then in force, oral policies of fire insurance were impossible. The applicable statute provided:

"* * * no fire insurance company, corporation or association, their officers or agents, shall make, issue, use or deliver for use, any fire insurance policy * * * other than as shall conform to the following conditions, which conditions shall be contained upon page two of such policy of insurance * * *."

Our present statute, ORS 743.606, contains no requirement of a writing and there is nothing comparable to the prior requirement that the conditions of the policy "be contained upon page two." The present statute simply requires that all fire insurance policies contain the statutory provisions. It does not prevent the making of oral insurance contracts.

As the agreement in question was for present coverage for the balance of the term of the existing policy, and was not for temporary insurance, ORS 743.075, limiting the effectiveness of binders "or other contracts for temporary insurance" to a 90 day period, has no application.

ORDER, AND THAT NO CHANGE SHALL BE MADE IN THE SAID SYSTEM OR IN THE WATER SUPPLY THEREFOR WITHOUT THE CONSENT IN WRITING OF THIS COMPANY."

The obvious purpose of this clause is to impose conditions in consideration of the reduction of the premium on account of the existence of a sprinkler system. It does not warrant that all premises covered by the policy shall have sprinkler systems, and is no bar to the additional coverage at the Umatilla Street location at the regular, rather than a reduced, premium rate.

Hartford also contends that the trial court erred in dismissing its indemnity claim against Frontier. Hartford's theory is that it is entitled to indemnity because Frontier violated its duties as agent by acting in excess of its authority, when it committed Hartford to the additional coverage.

There is evidence to support a finding that Frontier had actual authority to commit the company to insurance coverage. The agency agreement between Hartford and Frontier grants the agent authority to

"* * * Solicit, submit applications, receive and accept proposals, issue and deliver policies, bonds, certificates, endorsements and binders which the Company may, from time to time, authorize to be issued and delivered; * * *."

Mr. Mahoney, an underwriting supervisor for Hartford, testified that Frontier was authorized to write fire insurance for Hartford. He also testified that Frontier had authority to commit the company to coverage, and that if he had received a memo like that in evidence from Frontier, requesting the additional coverage, he would assume that such a commitment had been made.

Hartford contends, however, that the agent's actual authority is limited by ORS 743.075 (2), which provides:

> "No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond 90 days from its effective date, whichever period is the shorter."

As we pointed out above,[9] Frontier did not issue a binder or temporary insurance, but committed Hartford to additional long-term coverage on an existing policy.

The trial court found that Frontier's memo of March 3 was received by Hartford. This finding is supported by adequate evidence and is binding on us. Hartford, having been committed by its authorized agent to additional coverage, and having received from the agent a request to issue an endorsement, could have refused the coverage and so notified Frontier. It failed to do so. Under the facts as found by the trial court, Hartford's liability on the additional coverage was not the result of any failure on Frontier's part, but of its own failure to refuse the coverage and cancel the additional insurance.

We have examined Hartford's other assignments of error; some we need not reach, and the remainder involve no reversible error. The trial court's judgment must be, and is, affirmed.

---

[9] Note 2, supra.