## COOS HEAD TIMBER COMPANY,
*Appellant,*

*v.*

## UNIGARD INDEMNITY COMPANY et al,
*Respondents.*

### (83-692; CA A32404)

699 P2d 1143

William A. McDaniel, Coos Bay, argued the cause for appellant. With him on the briefs was Foss, Whitty & Roess, Coos Bay.

I. Franklin Hunsaker, Portland, argued the cause for respondents. With him on the brief were Robert F. Riede, and Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action on a fire insurance policy issued by the defendant insurers. The policy has a "protective safeguards endorsement," the introductory paragraph of which states, as material, that "[f]ailure to comply with [the clauses of the endorsement] shall suspend this insurance." One of the clauses contained in the endorsement is an "automatic sprinkler clause," which provides in relevant part:

"In consideration of the premium at which this policy is written, based on the protection of the premises by the sprinkler system, it is a condition of this policy that the insured shall exercise due diligence in maintaining in complete working order all equipment and services pertaining to the operation of the sprinkler system which are under the control of the insured. The insured shall give immediate notice to this Company of any impairment in or suspension of the sprinkler system or services (within the knowledge of the insured). * * *"

The policy was issued in July, 1982. In November of that year, one of the insured buildings was damaged by fire. In 1979, the sprinkler system serving that building had been damaged in an accident. Plaintiff made stopgap temporary repairs shortly after the accident. Although plaintiff's responsible employes were aware of the need for further repairs, none was made and, at the time of the fire, the system was operating at 10 to 15 percent efficiency. Plaintiff did not inform defendants of the condition of the sprinkler system before the policy was issued, and defendants were not in fact aware of it. However, defendants had not inquired about the condition of the system or inspected it, and the insurance was issued without a written application.

The action was tried to the court, and the trial judge concluded that plaintiff's breach of the automatic sprinkler clause defeated coverage. Plaintiff appeals. It makes six assignments of error, two of which warrant discussion.

■    Plaintiff argues first that, under *Arthur v. Palatine Ins. Co.,* 35 Or 27, 57 P 62, 76 AS 450 (1899), and *Allesina v. London Ins. Co.,* 45 Or 441, 78 P 392 (1904),

"* * * insurers are estopped from contesting the policy on the grounds of * * * a pre-existing breach when they fail to inquire as to the facts which are existent at the time of the

issuance of the policy, and which by the terms of the policy avoid the insurance."

Although *Arthur* and *Allesina* relate to waiver rather than estoppel, they do stand generally for the proposition that plaintiff states.[1] However, they are not controlling here. The court held in *Boardman v. Insurance Co. of Pa.*, 84 Or 60, 70, 164 P 558 (1917), that *Arthur* and *Allesina* "lose their importance and are not applicable to [fire insurance] policies issued since the passage" of Oregon Laws 1907, chapter 137, sections 1 and 3, as amended by Oregon Laws 1911, chapter 175. Those statutes set forth terms and conditions that fire insurance policies must contain, and the court stated in *Boardman* that "the statutory conditions cannot be waived except in the manner provided in the statute itself which must be in writing attached to or upon the face of the policy." 84 Or at 70.

It is not clear whether that language in *Boardman* was meant to refer to the waiver of *any* statutorily required policy condition or was directed only at the "unconditional and sole ownership" condition that was involved in the case. Be that as it may, ORS 743.633 now provides:

> "A fire insurance policy shall contain a provision as follows: '*No* permission affecting this insurance shall exist, or *waiver of any provision be valid, unless granted herein or expressed in writing added hereto.* No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.'" (Emphasis supplied.)

*See also* ORS 743.624(1). We conclude that *Arthur* and *Allesina* are inconsistent with the statutorily mandated waiver provision and are inapplicable here. We reject plaintiff's first argument.[2]

---

[1] The court did express a caveat in *Arthur:*

"* * * The assured has the right to assume that the insurer will make proper inquiry in reference to such matters as it may deem material to the risk, and * * * it waives knowledge as to all other matters, *except, possibly in reference to unusual or extraordinary circumstances within the knowledge of the assured, but of which there is nothing to put the insurer upon inquiry* * * *." 35 Or at 30. (Emphasis supplied.)

[2] We note, too, that if *Arthur* and *Allesina* were germane here, they *might* have no bearing on the legal effect of plaintiff's breach of the requirement that it maintain the system in complete working order, as distinct from the breach of the notification

The other argument plaintiff makes that calls for discussion is that "the automatic sprinkler clause was not a 'warranty' "; that the clause was "in consideration of the amount of the premium"; and, therefore, that plaintiff's breach does not give defendants a right to avoid coverage, but gives them only a right to the greater premiums they would have charged to insure a facility without a sprinkler system. Plaintiff relies on *Frontier Ins. v. Hartford Fire Ins.*, 262 Or 470, 499 P2d 1302 (1972), where the issue was whether a policy covering the insured's original business premises was also applicable to property at a second facility that the insured acquired after the policy was issued. The policy contained an "automatic sprinkler warranty." The new facility did not have a sprinkler system. There was a fire at the new facility, and the insurer argued that there was no coverage. The court disagreed, stating:

"* * * The 'AUTOMATIC SPRINKLER WARRANTY' reads as follows:

" 'THIS POLICY BEING WRITTEN AT A REDUCED RATE BASED ON THE PROTECTION OF THE PREMISES BY AN AUTOMATIC SPRINKLER SYSTEM, IT IS A CONDITION OF THIS POLICY THAT, SO FAR AS THE SPRINKLER SYSTEM AND THE WATER SUPPLY THEREFOR ARE UNDER THE CONTROL OF THE INSURED, DUE DILIGENCE SHALL BE USED BY THE INSURED TO MAINTAIN THEM IN COMPLETE WORKING ORDER, AND THAT NO CHANGE SHALL BE MADE IN THE SAID SYSTEM OR IN THE WATER SUPPLY THEREFOR WITHOUT THE CONSENT IN WRITING OF THIS COMPANY.'

"The obvious purpose of this clause is to impose conditions in consideration of the reduction of the premium on account of the existence of a sprinkler system. It does not warrant that all premises covered by the policy shall have sprinkler systems, and is no bar to the additional coverage at the [new] Umatilla Street location at the regular, rather than a reduced, premium rate." 262 Or at 483-84.

Defendants argue that this case is distinguishable from *Frontier Ins.*:

"* * * The Court in that case found only that

---

requirement. Because they are not controlling, we are not required to decide whether *Arthur* and *Allesina* remain viable authority.

unsprinklered premises were covered at regular rates by a fire policy that covered other sprinklered buildings at reduced rates. 262 Or at 483-84. The Court, however, expressly found that the contractual clause at issue in that case did not require that all buildings covered by the policy would have sprinkler systems. *Id.* at 484.

"In this matter, the very first sentence of the Automatic Sprinkler Clause provides that '[i]n consideration of the premium at which this policy is written, *based on the protection of the premises by the sprinkler system,* it is a condition of this policy that the insured shall exercise due diligence * * *.' (Emphasis added) Thus, in contrast to the *Frontier* case, the contract here spells out in clear terms that Plaintiff was expected to maintain a sprinkler system sufficient to protect the insured premises. * * *"

We agree generally with defendants. As far as can be told from the court's opinion, the clause in *Frontier Ins.* referred only to the sprinkler system at the insured's original location and did not purport either to require a sprinkler system or to say that a reduced premium would be available at any later-acquired location to which the policy became applicable. In this case, the building that burned was one of the facilities insured by the policy at the time it was issued, and the building had a sprinkler system at that time.

■■ It belabors the obvious to say—but we nevertheless do—that the presence of a fully operational sprinkler system in an insured building is material to a fire insurer's risk. The automatic sprinkler clause states that the consideration for it is the premium, but that fact does not aid plaintiff. Consideration for coverage and conditions of coverage are different things. The language of the sprinkler clause and of the introduction to the protective safeguards endorsement makes it clear that plaintiff's compliance with the clause is a condition of coverage and not merely the basis for a favorable premium.[3]

---

[3] The trial judge concluded that "[t]he sprinkler endorsement clause is a warranty" and, alternatively:

"Even if the protective safeguard endorsement is not a warranty but a condition subsequent, defendants have proved a material breach by plaintiff."

We agree in substance with those conclusions, but we do not find the terms "warranty" and "condition subsequent," which the parties also use, to be particularly helpful. The basic question in this case is whether the language of the policy makes its coverage

The trial court found that the premium for equivalent coverage without an automatic sprinkler clause would have been four times greater than the premium for the policy with the clause. It is not entirely clear whether defendants maintain that they would not have accepted the risk at the higher premium if the clause had not been included in the policy. However, plaintiff cites, and we find, no authority suggesting that coverage for a loss may be obtained after it occurs by the insured paying the insurer the difference between the premium it had charged for the risk it did cover and the premium it would have charged for a different risk that resulted in the loss.

Affirmed.

---

unavailable if the maintenance and notification requirements of the sprinkler clause are breached. The immediate question that we address, as plaintiff formulates it, is whether the relevant policy language pertains to coverage or to premium rates. In other words, the questions before us involve the meaning of the contract's terms. Words such as "warranty," "representation," "condition precedent" and "condition subsequent" tend more to obscure the questions than to assist in answering them.