**GENERAL STAR INDEMNITY COMPANY, Plaintiff, Appellee,**

v.

**James J. DUFFY and Mark K. Duffy, Defendants, Appellants.**

**No. 98–2244.**

United States Court of Appeals, First Circuit.

Heard June 11, 1999.

Decided Sept. 8, 1999.

Raymond J. Reed for appellants.

Daniel P. Sullivan for appellee.

Before SELYA, BOUDIN, and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

James and Mark Duffy own a 48–room lodging house with two retail stores on the first floor (the Premises), located at 257 Pleasant Street, Worcester, Massachusetts. After the Premises sustained over $100,000 in fire damage in July 1995, the Duffys' insurer rescinded the policy based on misrepresentations in the Duffys' application for insurance about the presence of sprinklers on the Premises. The insurer thereafter filed suit in the district court seeking a declaratory judgment validating its rescission. The district court obliged, ruling that the insurer was justified in relying on the misrepresentation by the Duffys in their application for insurance that the Premises was protected by sprinklers, despite an earlier report in the insurer's file indicating the absence of sprinklers. We affirm.

## I.

On June 1, 1994, the Virzi Insurance Agency, Inc. (Virzi), on behalf of the Duffys, requested a quote from E.A. Kelly for the cost of insuring the Premises. E.A. Kelly has authority to issue policies on behalf of General Star Indemnity Company (General Star). In order to facilitate the process, Virzi, on behalf of the Duffys, forwarded an unsigned application to E.A. Kelly. That application indicated that: (a) all building improvements had been updated within the last five years; and (b) the Premises was sprinklered. The notation that the Premises was sprinklered was handwritten.

Having received a quote from E.A. Kelly on June 3, 1994, Virzi, on behalf of the Duffys, submitted a signed application for insurance on June 9, 1994. E.A. Kelly issued an insurance policy for the Premises effective June 9, 1994. The policy contained an endorsement for "Protective Safeguards" which required smoke alarms, an ansul [fire protection] system and an automatic sprinkler system. On June 18, 1994, E.A. Kelly, on behalf of General Star, ordered an inspection of the Premises for the purpose of verifying its condition. On July 25, 1994, E.A. Kelly received the inspection report. The inspection form included a list of safety systems and devices, some of which had check marks next to them and some of which had no markings. The inspector's report contained a hyphen after the word "sprinkler"; the district court assumed for the purpose of its summary judgment ruling that the report indicated that the Premises was not sprinklered at the time of the inspection. Neither E.A. Kelly nor General Star further investigated whether or not the Premises had an automatic sprinkler system.

In May 1995, the Duffys requested a renewal quote from E.A. Kelly. In response, E.A. Kelly offered to renew the insurance for the Premises. The policy proposed stated that "SMOKE ALARMS, SPRINKLER SYSTEM AND ANSUL SYSTEM WARRANTED." On or about June 9, 1995, Virzi, on behalf of the Duffys, provided E.A. Kelly with a renewal application signed by Virzi and James Duffy. The signed renewal application warranted that the Premises was sprinklered. When E.A. Kelly renewed the insurance policy for the period of June 9, 1995 through June 9, 1996, it contained an endorsement for "Protective Safeguards" which required smoke alarms, an ansul system and an automatic sprinkler.

On July 9, 1995, the Premises sustained fire damage in the amount of $105,713.27. On August 7, 1996, General Star forwarded correspondence to the Duffys denying coverage and rescinding the policy based on the misrepresentation in the 1995 application that the Premises was sprinklered.

General Star thereafter filed a complaint for declaratory judgment pursuant to 28

U.S.C. §§ 2201 & 2202, seeking a judicial determination that General Star had a right to rescind the insurance policy based on the misrepresentation. In response, the Duffys filed counterclaims alleging violations of Massachusetts insurance and consumer protection laws. The district court granted General Star a summary judgment, concluding that under Massachusetts law General Star had a right to rescind the policy because the Duffys' misrepresentation that the Premises was sprinklered was material in that it increased the risk of loss to General Star as a matter of law. The district court further held that Massachusetts law imposed "no requirement to have the Premises inspected prior to issuing a renewal policy" and that "General Star was justified in relying on Mr. Duffy's representation that the Premises was sprinklered."

## II.

■ Summary judgment is warranted only where an examination of the record, viewed in the light most favorable to the non-moving party, reveals no material factual disputes and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Snow v. Harnischfeger Corp.*, 12 F.3d 1154, 1157 (1st Cir.1993). We review the grant of a summary judgment de novo. *Siegal v. American Honda Motor Co.*, 921 F.2d 15, 17 (1st Cir.1990).

■ We apply Massachusetts law to the insurance contract made in Massachusetts. The Massachusetts statutory provision establishing the conditions under which an insurer may rescind contracts of insurance provides:

No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or on his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss.

Mass. Gen. Laws ch. 175, § 186. For purposes of this appeal, the Duffys do not challenge the district court's findings that (1) the Duffys unintentionally made misrepresentations in their 1995 insurance application to General Star and (2) the misrepresentation regarding the existence of an automatic sprinkler system increased the insurer's risk of loss as a matter of law. The single issue pressed by the Duffys is whether General Star waived its right to rescind the insurance contract on the basis of that misrepresentation. The Duffys argue that, at the time General Star renewed the Duffys' policy in June 1995, General Star knew that the Premises was in fact not sprinklered because of the inspection report it received in June 1994. Having renewed the policy with knowledge that the Premises was not sprinklered, the Duffys argue, General Star waived its right to rescind on the basis of a misrepresentation about the presence of sprinklers (or so a jury, drawing inferences favorable to the Duffys, could have found).

The Duffys err in their insistence that General Star had knowledge in June 1995 that there were no sprinklers on the Premises because of the inclusion in its files of the June 1994 inspection report. That position wrongly accords no legal significance to the warranty made by the Duffys in their application for renewed insurance in June 1995 that there were sprinklers on the Premises. To the extent that the Duffys argue that the inclusion of the 1994 inspection report in the files of General Star at least creates a factual issue about whether the insurer should have inspected the premises to determine the accuracy of the representation by the Duffys about the presence of sprinklers, the Duffys again misapprehend the legal significance of their representation.

■ Pursuant to Massachusetts law and insurance law generally, General Star had a right to rely on the Duffys' representation that the Premises was sprinklered in June 1995. *See* Appleman & Appleman,

16B *Insurance Law and Practice* § 9086 (2d ed. 1967) ("[A]n insurer is entitled to rely on the representations of an insured without checking all of its files to determine if such insured is guilty of fraud."). The Duffys were in the best position to know the truthfulness of their statement about the sprinklers, and Massachusetts law does not impose an affirmative obligation on an insurer to investigate and verify the accuracy of an insured's representations. *See U.S. Express, Inc. v. Intercargo Ins. Co.*, 841 F.Supp. 1328, 1338 (E.D.N.Y.1994) (construing Massachusetts law); *see also North American Specialty Ins. Co. v. Savage*, 977 F.Supp. 725, 731 (D.Md.1997) ("Generally, insurers do not have a duty to investigate insurance applicants and are entitled to believe what an applicant claims to be true."); *Foster v. Auto–Owners Ins. Co.*, 703 N.E.2d 657, 660 (Ind.1998) ("Imposing this obligation [to cross-check the accuracy of an application against others submitted by the same applicant] would create the opportunity to play a catch-me-if-you-can game that would ultimately generate additional costs to insurers and no legitimate benefits to insureds.").

General Star was further justified in relying on the Duffys' representation that the Premises was sprinklered because of the Duffys' impending legal obligation to sprinkler the building. On September 25, 1990, the City of Worcester adopted the provisions of Massachusetts General Laws chapter 148, section 26H, requiring rooming houses such as the Premises to be equipped with automatic sprinkler systems no later than September 25, 1995. This independent legal obligation, applicable shortly after the renewal of the insurance contract, further justified General Star's reliance on the representation by the Duffys in June 1995 that the Premises was sprinklered.

We recognize the general proposition, cited by the Duffys, that an insurer may lose its right to rescind the coverage of an insurance contract if it knows of the facts that may warrant rescission and fails to disclaim within a reasonable time, or if it acts in any way inconsistent with an intention to disclaim. *See e.g., Kobico, Inc. v. Pipe*, 44 Mass.App.Ct. 103, 688 N.E.2d 1004 (1997). Pursuant to Massachusetts law, "[a]n insurance company is obliged to provide coverage to an insured who has violated a provision of the policy if the company has waived its right to assert the policy breach as a ground for denying liability." *Merrimack Mutual Fire Ins. Co. v. Nonaka*, 414 Mass. 187, 189, 606 N.E.2d 904 (1993). "Waiver consists of the insurer's voluntary or intentional relinquishment of a known right." *Id.*

In this case, however, these principles of waiver are simply inapposite. As a matter of law, on the basis of the summary judgment record, General Star was entitled to rely on the representation of the Duffys in their application for insurance renewal that the Premises was sprinklered, despite the presence in General Star's files of the 1994 inspection report.[1]

The Duffys challenge the district court's decision on another ground, noting that the district court cited to an Oregon case for the proposition that "the presence of a fully operational sprinkler in an insured building is material to a fire insurer's risk." *Coos Head Timber Co. v. Unigard Indemnity Co.*, 73 Or. App. 598, 603, 699 P.2d 1143, 1146 (1985). The Duffys cry foul because the *Coos Head Timber* case dealt with a policy in which the presence of a sprinkler system was a condition precedent while under the Duffys' policy the insured was only required to warrant

---

1. There is additional evidence in the record that the Premises had suffered minor fire damage in 1992 while insured under another policy issued through E.A. Kelly (although not on behalf of General Star). Even if General Star could be charged with knowledge of this earlier fire and the absence of sprinklers at that time, this fact would not alter the significance of the Duffys' June 1995 warranty and would not change the outcome of this case.

the presence of sprinklers.[2] Ergo, the Duffys argue, the district court actually treated the sprinkler requirement as a condition precedent and therefore failed to analyze whether General Star had waived its right to rescind. *See Krause v. Equitable Life Ins. Co.,* 333 Mass. 200, 203, 129 N.E.2d 617 (1955) (term which is made a condition precedent to recovery under an insurance policy is not subject to waiver).

The Duffys' argument on this point is unavailing. The Duffys presented this same argument to the district court in a Motion to Reconsider and/or Clarify. In disposing of that motion, the district court acknowledged, as it had in its original summary judgment order, that *Coos Head Timber* dealt with a policy under which an operational sprinkler system was a condition precedent and that the sprinkler clause in the Duffys' policy constituted a warranty. The district court, however, was merely citing to *Coos Head Timber* for the unassailable legal proposition that "the presence of a fully operational sprinkler system in an insured building is material to a fire insurer's risk." *Id.* Contrary to the contention of the Duffys, the court did not treat the sprinkler requirement as a condition precedent and it did consider the issue of waiver. In all events, our review is de novo, and any misapprehension below would not affect the outcome of this appeal.

### III.

In summary, the June 1995 renewal application of the Duffys warranted that the Premises was sprinklered. This warranty was explicitly made a part of the insurance contract. Despite the presence in its files of a June 1994 inspection report indicating the absence of sprinklers at the Premises, General Star was justified in issuing the policy renewal on the basis of the Duffys' new warranty without conducting an inspection of the Premises. When General Star discovered that the Premises was not in fact sprinklered in violation of the policy, and contrary to the representation of the Duffys, it took timely action to rescind the policy. The district court was correct in granting summary judgment for General Star and in dismissing the Duffys' counterclaims.

**Affirmed.**

---

**2.** The distinction between a warranty and a condition precedent is significant because Massachusetts General Laws chapter 175, section 186 "does not apply to provisions in an insurance policy which, by agreement of the parties, are made conditions precedent to recovery under the policy." *Kobico v. Pipe,* 44 Mass.App.Ct. 103, 105, 688 N.E.2d 1004 (1997) (citing *Krause v. Equitable Life Ins. Co.,* 333 Mass. 200, 203, 129 N.E.2d 617 (1955)). A statement in an application can only constitute a condition precedent under the policy, however, "by using the precise words 'condition precedent' or their equivalent." *Charles, Henry & Crowley Co. v. Home Ins. Co.,* 349 Mass. 723, 726, 212 N.E.2d 240 (1965). The district court concluded that the Duffys' policy did not contain the kind of precise language necessary to create a condition precedent and we agree.