Argued and submitted June 4, reversed on the reformation claim; reversed and
remanded on negligence claim; otherwise affirmed November 21, 1990

Joseph KABBAN,
*Respondent,*

*v.*

Harry MACKIN,
Bob Hart Insurance, Inc.,
The Travelers Insurance Company,
The Charter Oak Fire Insurance Company,
*Appellants.*

(87-CV-274; CA A51117)

801 P2d 883

James M. Callahan, Portland, argued the cause for appellants Harry Mackin and Bob Hart Insurance, Inc. With him on the briefs were Bittner & Barker, P.C., Portland, and Callahan & Shears, P.C., Portland.

Patrick C. Ford, Medford, argued the cause for appellants Travelers Insurance Company and Charter Oak Fire Insurance Company. With him on the briefs was Patrick Ford, P.C., Medford.

Clayton C. Patrick, Salem, argued the cause for respondent. With him on the brief were Nancy G. Neslund and Neslund and Neslund, Salem, and Thomas M. Hull and Burrows & Hull, Grants Pass.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff brought this action against Travelers Insurance Company (Travelers), Mackin and his employer, Bob Hart Insurance, Inc. (Hart), alleging claims for coverage by estoppel, negligence and reformation of the insurance policy. A jury found against defendants and awarded damages to plaintiff. The trial court also granted reformation of the policy. Defendants raise numerous separate assignments of error. We reverse on the reformation claim, reverse and remand on the negligence claim and otherwise affirm.

In 1979, plaintiff purchased a building in Grants Pass housing a restaurant and lounge, then known as "The Woodshed." He obtained insurance for the premises through his insurance agent Mackin in 1981. Travelers began insuring the premises in 1983, and the policy was renewed yearly thereafter.

Plaintiff operated "The Woodshed" until 1982, when ill health caused him to close the restaurant and move to San Diego. In May, 1982, he leased the premises to Wehab, who operated a restaurant on the premises until September, 1985. Plaintiff testified that he notified Mackin that "The Woodshed" was closed after Wehab quit operating.

An engineer for Travelers visited the premises on November 20, 1985, and determined that the building was not occupied. On January 9, 1986, Travelers sent a memorandum to Mackin, indicating that the policy would have to be cancelled unless the building were reoccupied. Mackin went to the premises on January 30, 1986. He found the building locked but observed cars in the parking lot, heard people working inside and noted that the marquee read, "Opening Soon." On the basis of those observations, he reported to Travelers that "The Woodshed" was open for business. Mackin did not notify plaintiff about Travelers' concern that the building was vacant and its intention to cancel the policy. Sometime in 1986, plaintiff leased the premises to Kabrzycki, who obtained a retail liquor license in April, 1986, but was unable to obtain liquor liability insurance.

On July 29, 1986, plaintiff called Mackin's office to inquire about liquor liability insurance for Kabrzycki. However, before Mackin had contacted plaintiff, plaintiff sent a

telegram to Kabrzycki telling her to vacate the premises. Later plaintiff told Mackin that he had sent the telegram to Kabrzycki. Kabrzycki vacated the premises on July 30, 1986. After that date, the premises were unoccupied. Plaintiff called Mackin again on November 3, 1986, asking for the name of a realtor with whom to list "The Woodshed" and told Mackin that "The Woodshed" was still closed. On November 7, 1986, Mackin forwarded the renewal policy on the premises to plaintiff, along with a memo advising him that the building was "now covered for replacement" and suggesting that plaintiff review the policy and contact him if he had questions. The effective date of the policy was November 10, 1986.

The unoccupied premises were destroyed by an arson fire on November 16. The insurance policy contained the statutorily required clause excluding coverage when the building is vacant for more than 60 consecutive days.[1] Travelers denied coverage, because plaintiff's building had been unoccupied for more than 60 consecutive days when the fire occurred.

■ Travelers contends that its motion for directed verdict against plaintiff's coverage by estoppel claim should have been granted on a number of grounds. First, it asserts that Mackin's conduct was not the "conduct of an agent within the meaning of ORS 744.165." We disagree.

ORS 744.165(1) provides:

"Except as provided in a group contract of insurance under subsection (2) of this section, any person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provisions in the application and policy to the contrary are invalid and of no effect whatever."

The purpose of the statute is to bind insurers by the acts of

---

[1] ORS 742.216 provides, in pertinent part:

"A fire insurance policy shall contain a provision as follows: 'Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring:

" '(1) While the hazard is increased by any means within the control or knowledge of the insured; or

" '(2) While a described building, whether intended for occupancy by owner or tenant, is vacated or unoccupied beyond a period of 60 consecutive days[.]' "

persons employed in the insurance business. *Paulson v. Western Life Insurance Co.,* 292 Or 38, 636 P2d 935 (1981). Since *Paulson,* we have applied the statute to misstatements on applications for insurance and the interpretation of policy coverage. *Nofziger v. Kentucky Central Life Insurance Co.,* 91 Or App 633, 639, 758 P2d 348, *rev den* 306 Or 527 (1988); *C.I.S. Northwest v. Berjac of Portland,* 87 Or App 233, 237, 742 P2d 618, *adhered to as clarified,* 89 Or App 117, 747 P2d 406 (1987), *rev den* 305 Or 433 (1988). Although this case requires a somewhat different analysis, we conclude that Mackin's conduct, contacts with plaintiff and subsequent written coverage representation to plaintiff did involve "matters relating to the * * * policy issued."

Mackin had been obtaining insurance for plaintiff since 1981. He and plaintiff had communicated about insurance and business matters more frequently than simply on the renewal dates of the policy. In late 1985, Mackin was alerted to the vacancy and unoccupancy clause in the policy when Travelers indicated that the policy would have to be cancelled if the building was not occupied. In late July, 1986, Mackin knew that plaintiff had ordered Kabrzycki to cease operating in the building because Kabrzycki had not obtained liquor liability insurance. On November 3, 1986, plaintiff informed Mackin that "The Woodshed was still closed." Although plaintiff did not ask insurance coverage questions during the July and November telephone conversations, Mackin was clearly alerted to the potential coverage problem. Yet on November 7, Mackin represented to plaintiff in writing that the building was now "covered." Given Mackin's knowledge that the building was not occupied and Travelers' previous concern regarding the occupancy of the building, we cannot say as a matter of law that Mackin's communication to plaintiff did not involve "matters relating to the * * * policy issued." *See Paulson v. Western Life Insurance Co., supra,* 292 Or at 62. The trial court did not err in denying Travelers' motion for directed verdict on this ground.

Travelers next contends that, as a matter of law, Mackin's conduct was insufficient to establish coverage by estoppel. To establish an estoppel against Travelers, plaintiff had to prove a representation or conduct amounting to a representation by someone acting on behalf of the insurer that was inconsistent with the express terms of the policy and that

he reasonably relied on the representation. *Farley v. United Pacific Ins. Co.*, 269 Or 549, 525 P2d 1003 (1974); *Allstate Ins. v. State Farm Ins.*, 67 Or App 623, 628, 679 P2d 879 (1984); *Goddard v. Avemco Ins. Co.*, 43 Or App 39, 43, 602 P2d 291 (1979).

Travelers contends that nothing in the July and November telephone conversations between Mackin and plaintiff or Mackin's November 7, 1986, letter related to the occupancy clause of the policy; therefore, Mackin did not represent that the occupancy clause would not apply under the circumstances. Regarding reliance, Travelers argues that, even if we find that Mackin's conduct amounted to a representation that the occupancy clause did not preclude coverage, plaintiff could not have relied on such a representation, because he did not know about it. Moreover, Travelers argues that any reliance that plaintiff placed on such a representation could not have been reasonable under the circumstances, because "the restaurant had been closed well beyond sixty days." These arguments ignore the context in which the renewal of plaintiff's policy occurred and we reject them.

■ Plaintiff had been purchasing fire insurance coverage on the building through Mackin for six years. For six months, from September, 1985, to April, 1986, no business was operated in the building. Mackin was aware of the coverage problem that that created, but he did not alert plaintiff. Mackin also knew, as late as November 3, 1986, that no restaurant or other business was being operated in the building. Under those circumstances, a jury was entitled to find that Mackin's renewal of the policy without discussion, coupled with his November 7 letter, amounted to a representation that the unoccupied building was covered under the policy. Moreover, the jury was entitled to find that plaintiff had relied on that representation in renewing the policy.

Travelers' argument concerning the reasonableness of plaintiff's reliance is similar to a separate assignment of error in which Travelers contends that its motion for directed verdict should have been granted because "plaintiff was bound by the terms of the policy even though he failed to read it." Although it is raised separately, we consider the latter point in our discussion of the reasonableness of plaintiff's reliance on Mackin's representation.

Travelers contends that this issue is controlled by the general proposition of contract law that

> "in the absence of special circumstances an insured is bound by the terms of an insurance policy purchased by him even though he is unaware of those terms because he has failed to read the policy, or having read the policy misunderstands it." *Knappenberger v. Cascade Ins. Co.,* 259 Or 392, 398, 487 P2d 80 (1971).

In *Knappenberger,* the insured argued that the insurer, acting through an insurance broker, *failed to advise* the insured's wife, who was acting for the insured, of the effective date of a coverage exclusion. The insured did not argue that the insurance broker's conduct *amounted to a representation that was inconsistent with the express terms of the policy,* as plaintiff does here.

■ Here, a jury could find that, because of the existence of special circumstances, plaintiff should not be barred from recovery by his failure to read the policy. *See Franklin v. Western Pac. Ins. Co.,* 243 Or 448, 414 P2d 343 (1966); *Storms v. U.S. Fidelity & Guar. Co.,* 118 NH 427, 430-31, 388 A2d 578, 580 (1978). Those special circumstances include the evidence that we have already discussed in our determination that the jury was entitled to find a representation by Mackin and reliance by plaintiff, coupled with the fact that the exclusion on which Travelers relies is one sentence, two lines long, appearing on page 20 of a 35-page policy. Although Mackin suggested that plaintiff should read the policy, Mackin made no mention of the specific coverage problem that he knew was created by that exclusion.

Although no single factor may be a sufficient special circumstance to except plaintiff from the general rule stated in *Knappenberger,* the combination of factors is sufficient to permit a jury to determine that there were such special circumstances permitting plaintiff reasonably to rely on Mackin's representation, even though the representation was inconsistent with the policy. Accordingly, the trial court did not err in denying this aspect of Travelers' motion for a directed verdict.

■■ Travelers also contends that the trial court should have granted its motion for a directed verdict, because "estoppel cannot be employed to create coverage where none

existed." *See, e.g., ABCD... Vision v. Fireman's Fund Ins. Companies,* 304 Or 301, 744 P2d 998 (1987). However, that principle does not apply here, because plaintiff based his claim on conduct of the insurer that occurred before the loss. *Paulson v. Western Life Insurance Co., supra,* 292 Or at 52; *Shisler v. Fireman's Fund Ins. Co.,* 87 Or App 109, 116, 741 P2d 529 (1987). In addition, the policy provision at issue is a condition of forfeiture which is always subject to estoppel. *See ABCD... Vision v. Fireman's Fund Ins. Companies, supra,* 304 Or at 307.

■ ■   In this assignment of error, Travelers also argues that, under *Coos Head Timber Co. v. Unigard Indemnity Co.,* 73 Or App 598, 699 P2d 1143, *rev den* 299 Or 663 (1985), plaintiff's claim is precluded by the written waiver clause that is statutorily required in a standard fire insurance policy. In *Coos Head Timber Co.,* the plaintiff argued that the "insurers are estopped from contesting the policy on the grounds of * * * a pre-existing breach[,]" because of *Arthur v. Palatine Ins. Co.,* 35 Or 27, 57 P 62, 76 AS 450 (1899), and *Allesina v. London Ins. Co.,* 45 Or 441, 78 P 392 (1904). 73 Or App at 600. We disagreed, holding that plaintiff's estoppel claim was prohibited by ORS 743.633 (*since renumbered* ORS 742.222), which requires that a fire insurance policy contain this language:

> "No permission affecting this insurance shall exist, or *waiver* of any provision be valid, unless granted herein or expressed in writing added hereto." (Emphasis supplied.)

However, we now conclude that *Coos Head Timber Co.* does not sufficiently address the express language of ORS 742.222, which refers only to waiver, or the effect of previous cases that recognize the distinction between estoppel and waiver.

In *Kimball v. Horticultural Fire Relief,* 79 Or 133, 154 P 578 (1916), the court noted:

> "The terms 'waiver' and 'estoppel,' as applied to the law of insurance contracts, are usually used as meaning the same thing, and they are so used in many of our own cases. Courts have frequently asserted that they are convertible terms. * * * A closer inspection of the matter, however, convinces us that they are essentially different. A waiver involves the act or conduct of one of the parties to the contract only. An estoppel involves the act or conduct of both parties to the contract. * * * A waiver is the intentional relinquishment of a known

right. * * * It involves both knowledge and intent. An estoppel may arise where there is no intent to mislead. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position. * * * An estoppel always involves this element. A waiver may amount to an estoppel, but not necessarily so." 79 Or at 141, *quoting Webster v. State Mutual Fire Ins. Co.,* 81 Vt 75, 80, 69 A 319 (1908).

In *Oatman v. Bankers' Fire Relief Assn.,* 66 Or 388, 133 P 1183, 134 P 1033 (1913), the insured argued that the insurer had waived a policy condition required under the standard policy law, that provided:

"This entire policy, *unless otherwise provided by agreement* indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple[.]" 66 Or at 396. (Emphasis in original.)

The court held that the policy was void under the statute, because the insured did not own the land in fee simple and there was no agreement to the contrary indorsed on the policy or added to it. Moreover, the court held that the statute superseded the common law concerning waiver. 66 Or at 400. However, in *Mercer v. Germania Ins. Co.,* 88 Or 410, 414, 171 P 412 (1918), the Supreme Court held that there was sufficient evidence to support the jury's finding that the insurer was estopped from relying on the same standard policy condition construed in *Oatman.* In distinguishing *Oatman,* the court noted:

"It was not the intention of the legislature when it enacted the statute defining the form of an insurance policy to relieve insurance companies from those estoppels *in pais* which are essential to fair dealing in the business world. Notwithstanding this legislation an insurer may still estop itself from relying on one or more of the defenses reserved to it in the standard policy." 88 Or at 413.

More recently, we distinguished estoppel from waiver in *Daly v. Fitch,* 70 Or App 18, 21 n 2, 687 P2d 1124 (1984):

"Several cases suggest that estoppel is a more appropriate concept [under the circumstances]. *See Stinemeyer v. Wesco Farms, Inc.,* [260 Or 109, 116, 487 P2d 65 (1971)]; *County of Lincoln v. Fisher* [*sic*] *et al,* 216 Or 421, 452, 339 P2d 1084 (1959). Waiver refers to the *intentional* relinquishment of a

known right, claim or privilege. Estoppel is an equitable principle that precludes someone from exercising a right to another's detriment if the right holder, through words or conduct, has led the other to believe that the right would not be exercised. The effect of accepting late payments on a seller's right to exercise a time-essence clause is usually more properly put in terms of estoppel rather than of waiver." (Emphasis in original.)

We now conclude that estoppel should not be included under the term "waiver" in ORS 742.222 without there being some indication of legislative intent to do so. Travelers has not provided any such indication, and we have found none. Therefore, we overrule *Coos Head Timber Co. v. Unigard Indemnity Co., supra,* to the extent that it holds that estoppel is inconsistent with ORS 742.222. Accordingly, the trial court did not err in denying Travelers' motion for a directed verdict on this issue.

■ Next, Travelers contends that the trial court erred in "instructing the jury that an agent is a person authorized to act for another * * * and that knowledge on the part of the agent is imputed to the princip[al] * * * without including the limitations required by ORS 744.165." Assuming, without deciding, that Travelers properly preserved the assigned error, we hold that the court sufficiently instructed the jury regarding the limitations of ORS 744.165.

ORS 744.165 recognizes an agency relationship, apart from common law, under specific circumstances. *Paulson v. Western Life Insurance Co., supra,* 292 Or at 60; *C.I.S. Northwest v. Berjac of Portland, supra,* 87 Or App at 237. It was appropriate for the trial court to instruct the jury on the application of ORS 744.165 under the circumstances of this case; however, it did not need to use the exact language of ORS 744.165 in its instructions. *Morris v. Fitzwater,* 187 Or 191, 199, 210 P2d 104 (1949). The trial court also instructed:

"If you find that Mr. Mackin or [sic] Mr. Kabban discussed matters related to the policy, then I instruct you that you should consider Defendant Mackin as Travelers' agent, and that the provision in the policy of insurance issued to Plaintiff by Travelers which provides that notice to an agent or knowledge possessed by an agent shall not effect an estoppel against Travelers is invalid and of no effect whatever, and

you shall not consider this provision of the policy in your deliberations."

The language that the court chose was equivalent to the terms of ORS 744.165 under the circumstances. Therefore, the court properly instructed the jury on the limitations under ORS 744.165.[2]

■ Finally, Travelers contends that the trial court erred in granting reformation. We agree. Reformation is unnecessary if the insured has an adequate remedy at law, *Frontier Ins. v. Hartford Fire Ins.*, 262 Or 470, 478, 499 P2d 1302 (1972); *Bird v. Central Mfg. Ins. Co.*, 168 Or 1, 7, 120 P2d 753 (1942), or if the insurer "is estopped to rely upon a breach of a condition of the policy." *Williams v. Pacific States Fire Ins. Co.*, 120 Or 1, 5, 251 P 258 (1926). The jury found for plaintiff on his claim that Travelers was estopped from relying on the exclusion in the policy. Therefore, plaintiff had an adequate remedy at law, and the trial court erred in reforming the policy.

We turn now to the assignments of error raised by Mackin and Hart. Like Travelers, they assert several assignments that advance different grounds on which the trial court purportedly erred in denying their motion for directed verdict. First, they contend that they never undertook "to do anything other than procure the standard property insurance coverages that were in fact provided"; therefore, they had no duty to advise plaintiff concerning his insurance needs.

■ When an insurance agent agrees to procure insurance, the agent owes a duty to exercise reasonable skill and care in obtaining that insurance. *Joseph Forest Products v. Pratt*, 278 Or 477, 480-81, 564 P2d 1027 (1977), *quoting* 16 Appleman, *Insurance Law and Practice* 510-514, § 8841 (1968); *Hamacher v. Tumy et al*, 222 Or 341, 347, 352 P2d 493 (1960). However, this case also involves the question of whether Mackin and Hart had a duty to advise plaintiff concerning the coverage problem created by the building vacancy. Under certain circumstances, we have held that the agent may

---

[2] Travelers also criticizes a second instruction involving the general law of agency on the same grounds. However, it was consistent with ORS 744.165. *See State Farm Fire v. Sevier*, 272 Or 278, 295, 537 P2d 88 (1975). Moreover, as previously discussed, the court properly instructed the jury on the limitations under ORS 744.165.

also have a duty to advise the prospective insured regarding different policies and coverages. *Precision Castparts v. Johnson,* 44 Or App 739, 743, 607 P2d 763 (1980); *Larson v. Transamerica Life,* 41 Or App 311, 318-19, 597 P2d 1292, *rev den* 287 Or 301, 287 Or 508 (1979).

■ Neither *Precision Castparts* nor *Larson* is helpful here, because plaintiff was not choosing between alternative policies. However, as we have previously discussed, plaintiff presented evidence from which a jury was entitled to find that Mackin and Hart knew that the building was vacant before Mackin represented that plaintiff's building was covered under the renewed policy. Plaintiff also presented expert testimony from another insurance agent in the community that it is standard practice for an agent under those circumstances to advise the insured concerning the coverage problems created by the unoccupied status of the building. Plaintiff did not need to show that Mackin and Hart impliedly undertook to advise plaintiff concerning that problem, because he provided evidence from which the jury was entitled to find that they had a duty to advise plaintiff and failed to do so. Therefore, the trial court did not err in denying their motion for directed verdict on that ground.

■ Next, Mackin and Hart argue that their liability and that of Travelers is mutually exclusive. Plaintiff's negligence claim is the only claim against them that is the subject of this appeal. They did not raise this issue in connection with the negligence claim in their motion for directed verdict. Therefore, we decline to consider it. *Vancil v. Poulson,* 236 Or 314, 320, 388 P2d 444 (1964).

■ Mackin and Hart also contend that the negligence claim should not have been submitted to the jury, because plaintiff failed to prove that the desired coverage was obtainable. They base their argument on the proposition that "plaintiff has the affirmative burden of proving that the coverage he allegedly wanted was available in the insurance market and that he could have obtained such coverage." *See, e.g., Bayly, Martin & Fay v. Pete's Satire,* 739 P2d 239 (Colo 1987). The court held in *Bayly*:

> "Where, as here, a claim for relief is predicated on the negligent failure of an insurance broker or agent to procure a particular type of insurance coverage sought by the plaintiff, it

is incumbent upon the plaintiff to prove by a preponderance of evidence, as an aspect of causation and damages, that such insurance was *generally available in the insurance industry* when the broker or agent obtained insurance coverage for the plaintiff. *A plaintiff is not required to show that the particular insurance company from which the servicing broker or agent procured the plaintiff's policy would have written such coverage or that the servicing broker or agent could have obtained such coverage from a specific company.*" 739 P2d at 244. (Emphasis supplied.)

Mackin testified that, at the time of the last renewal of plaintiff's policy, coverage was "available for vacant buildings in specialty markets." Moreover, plaintiff's expert testified that, at that time, there were insurance companies to which plaintiff could have applied for coverage of his building in its unoccupied state. Therefore, plaintiff met his burden that such coverage was generally available in the insurance industry.

■ Finally, Mackin and Hart argue that the trial court erred in giving this jury instruction on the applicable standard of care:

"Defendants Mackin and Bob Hart Insurance, Inc., as insurance agents[,] owe Plaintiff a duty to exercise reasonable skill and care to obtain insurance coverage, and[,] * * * based upon the facts supplied or reasonably ascertainable by the agent, to advise Plaintiff what expected coverage risks are and are not insured against, and to advise Plaintiff with regard to other steps Plaintiff could have taken to avoid the loss or satisfy the occupancy requirements of the policy."

The first part of the instruction, that Mackin and Hart owed "a duty to exercise reasonable skill and care to obtain insurance coverage," is a correct statement of law. *Joseph Forest Products v. Pratt, supra,* 278 Or at 480-81; *Hamacher v. Tumy et al, supra,* 222 Or at 347. However, the remaining text of the instruction essentially adopted, as the applicable standard of care, plaintiff's expert witness' testimony regarding the standard practice for an insurance agent under the circumstances. The opinion testimony of plaintiff's expert was admitted only to assist the jury in determining whether, under the circumstances, Mackin and Hart had a duty to give coverage advice to plaintiff. *See W. R. Chamberlin & Co. v. Northwestern Agencies,* 289 Or 201, 206, 611 P2d 652 (1980).

The jury was not bound to accept that testimony, even if it was uncontradicted, because the "weight of the opinion of an expert witness is a matter particularly within the province of the jury." *W. R. Chamberlin & Co. v. Northwestern Agencies, supra,* 289 Or at 207. It remained for the jury to decide whether Mackin and Hart had a duty to advise plaintiff regarding the coverage problem created by the building's vacancy. The trial court's instruction presented an incorrect standard of care which, under the circumstances, compelled the jury to find for plaintiff. Therefore, Mackin and Hart are entitled to a new trial.

Reversed on the reformation claim; reversed and remanded on negligence claim; otherwise affirmed.[3]

---

[3] We need not reach Mackin and Hart's other assignments of error because of our disposition of the case. However, we note in passing that an election of remedies issue may arise on remand, because it would be inconsistent to allow plaintiff to recover damages against Mackin and Hart for negligent failure to procure insurance after the court enters judgment against Travelers on plaintiff's claim that it is estopped from relying on the exclusion in the policy to deny coverage, especially when plaintiff pled those two claims in the alternative. An election of remedies may be required to prevent double recovery for a single wrong when the remedies are inconsistent. *See McAllister v. Charter First Mortgage, Inc.,* 279 Or 279, 286-87, 567 P2d 539 (1977); *Airport Lumber Co. v. Annes et ux,* 203 Or 294, 296-97, 279 P2d 1038 (1955).