Argued and submitted February 27, affirmed April 17, reconsideration denied July 10, petition for review denied August 6, 1991 (312 Or 16)

Leroy E. KLEIN,
*Respondent,*

*v.*

BIEKER & ASSOCIATES, INC.,
dba Bieker, Richard & Ross,
and Aetna Casualty & Surety Company,
*Appellants.*

(A8808-04643; CA A62332)

809 P2d 1344

James M. Callahan, Portland, argued the cause for appellant Bieker & Associates, Inc. With him on the briefs was Callahan & Shears, P.C., Portland.

Jeremy L. Fellows, Portland, argued the cause for appellant Aetna Casualty & Surety Company. On the brief were Allen W. Lyons and Scheminske & Lyons, Portland.

Terry G. Sundkvist, Portland, argued the cause for respondent. With him on the briefs was Jackson & Vause, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action for damages that he incurred because the workers' compensation insurance for his business expired before two of his employees were compensably injured. He alleged that Bieker & Associates, Inc. (Bieker), an insurance agency, committed fraud by virtue of its agent John Ludwick's misrepresentations to plaintiff about the insurance. He also stated a claim for negligence against Bieker and, derivatively, against Aetna Casualty & Surety Company (Aetna). The jury found in plaintiff's favor on both claims, awarded compensatory damages against both defendants and awarded punitive damages against Bieker. Defendants appeal separately. We affirm.

In 1985, plaintiff purchased a business, Contract Design Center, from Daniel McDaniel. Aetna had been McDaniel's workers' compensation insurer, and the insurance had been placed through Bieker. Plaintiff contacted Ludwick at the Bieker office in September, 1985. Ludwick represented to him that he could assume McDaniel's coverage by paying past due premiums and taking responsibility for later ones. Plaintiff agreed and made the payments. The payment of the past due premiums was in Ludwick's and Bieker's financial interest.

The Aetna policy contained an express non-assignability provision. Ludwick did not inform Aetna about the "assumption" or take any other measures to effect coverage for plaintiff under the policy, and plaintiff was not named an insured under it. Consequently, he did not receive notice of its termination from either defendants or the Workers' Compensation Compliance Division when the policy expired in May, 1986. Instead, the notices were sent to McDaniel who ignored them. The two employees were injured in August. Plaintiff was found to be a noncomplying employer and was required to pay $16,194.31 to SAIF. ORS 656.054(3).

■ We turn first to Bieker's appeal. It first assigns error to the denial of its motion for a directed verdict on the fraud claim. Bieker contends that Ludwick's representations, even if false, were not the cause of plaintiff's damage. Bieker reasons that the coverage expired by its terms in May and that, even if the policy had covered plaintiff, it would not have been in force at the time of the August injuries. Bieker also argues

that Ludwick's representations as to coverage were binding on Aetna as a matter of law. Therefore, plaintiff had the coverage that Ludwick represented that he did, regardless of the falsity of the representations.[1]

Plaintiff responds that his damage resulted from his not being named as an insured and, therefore, his not receiving the notices of termination. Consequently, plaintiff explains, Bieker's arguments based on the expiration of coverage and the existence of coverage before the expiration date miss the point. Plaintiff is correct. *Kabban v. Mackin,* 104 Or App 422, 435, n 3, 801 P2d 883 (1990), and similar cases on which Bieker relies are not apposite. They hold that a plaintiff cannot recover both insurance policy proceeds and damages from an agent for failing to secure coverage. They do not hold that an agent's failure is not actionable when it results in damage that cannot be redressed by a recovery under the policy. There was evidence of causation that the jury could believe, and we reject Bieker's first assignment.

Bieker next assigns error to the award of punitive damages. It contends, first, that there was no evidence to support a finding that Ludwick's conduct was sufficiently aggravated to warrant punitive damages. This is a case of intentional fraud. In *McMullin v. Murphy,* 89 Or App 230, 748 P2d 171, *rev den* 305 Or 576 (1988), a case that the parties do not cite, we held that evidence sufficient to support a finding of intentional fraud is *ipso facto* sufficient to support the findings necessary for an award of punitive damages.

Bieker also argues that there was no evidence of an employment or agency relationship between it and Ludwick or that he was acting in the course and scope of that relationship when he made the misrepresentations or that his false representations were intended to benefit Bieker. Therefore, Bieker contends, punitive damages cannot be assessed against it for his misconduct. We do not agree that the proof of the relationship and of the requisite connection between Ludwick's agency and his misrepresentations was insufficient.

Bieker argues that, although Ludwick testified that

---

[1] In this and other particulars in this opinion, we will address Bieker's arguments according to their terms. By doing so, we do not imply agreement or disagreement with any underlying legal propositions on which those arguments are premised.

he was a part owner of Bieker, there was no evidence that he was its employee or agent rather than an independent contractor. However, immediately before testifying that he was a part owner, Ludwick testified that he was an insurance sales agent. Ludwick also testified that, before becoming a part owner of Bieker, he had been an independent agent. Even if there were no other evidence—and there was—it would have been inferable from Ludwick's testimony that a person who is an insurance agent by vocation, who *used to be* independent and who now works at and is a part owner of an insurance agency is not an independent contractor. We reject the argument.

■    In a memorandum of additional authorities, Bieker cites *Badger v. Paulson Investment Co., Inc.,* 311 Or 14, 803 P2d 1178 (1991),

> "for the proposition that a finding of apparent authority will not support an award of punitive damages against a principal for the fraudulent conduct of an agent where there is no evidence that the principal was 'aware of, approved of, ratified, or countenanced' that fraudulent conduct. * * * 311 Or. at 27."

However, this is not such a case. There was evidence to support a finding that Ludwick was acting within the course and scope of his actual authority when he made the misrepresentations and that he was motivated to serve Bieker's interests in making the misrepresentations. Moreover, his testimony that he was a part owner of the small agency was enough to permit the jury to infer that the management of the enterprise had the requisite connection with his improper conduct to make it liable for punitive damages. The award was proper.

■    Bieker makes one other assignment that pertains to the fraud claim—that the court erred by allowing expert testimony that it is the practice in the industry to issue a new workers' compensation policy when a business is purchased rather than to permit the new owner to assume the existing coverage. Bieker maintains:

> "The issue here was whether the Aetna worker's compensation policy issued to McDaniel was in fact assumable. That issue is an issue of contract construction which is a matter of law for the court. It is not a proper subject for expert testimony. Moreover, it is irrelevant whether other policies with which plaintiff's expert was familiar were assumable. It would

be of no consequence if 99.9% of all worker's compensation policies issued in the United States were not assumable. So long as the specific policy at issue in this case, the Aetna policy issued to McDaniel, was assumable, either by its express terms or through the operation of the principles of equitable estoppel, Ludwick's representations to that effect were *not* false.

"\* \* \* \* \*

"It is a well-established principle of law that a contract condition requiring written consent may be waived. The evidence clearly established that Aetna was estopped to assert the written consent condition based on the representations of its acknowledged agent. The trial court's error in failing to instruct the jury that plaintiff was in fact insured under the Aetna policy issued to McDaniel until its expiration on May 16, 1986, was compounded by allowing plaintiff's expert to testify that, in his opinion, that policy was not assumable.

"The challenged testimony of Mr. Fraley went to the critical issue of the falsity of Mr. Ludwick's representations regarding the assumability of the Aetna policy." (Emphasis Bieker's.)

However, the evidence was admissible precisely *because* it went to the critical issue of the knowing falsity of Ludwick's representations. The legal question of whether the policy *could* be assumed is not the relevant matter on which the testimony had a bearing; rather, the testimony was probative of the fact that, even if the policy could be assumed, Ludwick, as a "practitioner," knew that it *would not* be effectively assumed at the time that he represented the contrary.

■     Bieker's remaining assignments relate to the negligence claim.[2] Bieker first repeats the contention from its first assignment that plaintiff was covered by the policy, until it expired, by virtue of Ludwick's representations. We again reject that contention as irrelevant to the issues. Bieker next argues that the evidence was insufficient to support any of plaintiff's specifications or the claim as a whole. We disagree.

---

[2] Because the compensatory damages awarded on the two claims overlap, it is arguably unnecessary for us to address Bieker's assignments concerning the negligence claim. *See Dynagraphics, Inc. v. U.S. National Bank of Oregon,* 100 Or App 108, 110, 785 P2d 760, *rev dismissed* 310 Or 120, 792 P2d 439 (1990). Be that as it may, we will address the arguments, in part because they are incorporated in Aetna's brief and are independently relevant to its appeal.

Finally, Bieker argues:

"If one accepts the proposition that by virtue of the insurance agent's representations, plaintiff was in fact covered under the Aetna worker's compensation policy and entitled to all the rights and benefits of that policy, then it necessarily follows that under Oregon law that coverage remained in effect until terminated in accordance with Oregon statutory requirements. ORS 656.427.

"Consequently, defendant Bieker cannot be liable irrespective of how the jury resolved the conflict in the testimony regarding notice of non-renewal. If the jury determined that plaintiff had received either of the two written notices, * * * defendant Bieker could not reasonably have been found negligent for not notifying plaintiff that his coverage was terminating. If, on the other hand, the jury determined that the plaintiff had not received written notice that the policy was terminating, then the Aetna worker's compensation coverage was still in force in August, 1986 and plaintiff was entitled to coverage under that policy for the two compensable injury claims."

Bieker then reasons that plaintiff could have recovered the damages in an action on the workers' compensation policy[3] and,

"[u]nder the doctrine of avoidable consequences, defendant is liable only for those damages that could not have been avoided in the exercise of reasonable care. If plaintiff has enforceable rights against Aetna under its worker's compensation policy, he cannot choose to forego his right to recover under that policy and still pursue a claim against his insurance agent for negligently failing to provide him the coverage the Aetna policy in fact provides." (Citation omitted.)

■ Like some of the earlier ones we have discussed, that ornate argument dwells on a theoretical possibility and gives no attention to what actually occurred. Plaintiff proved, and the jury found, that he was injured by Bieker's negligence and its fraud. We cannot reverse the judgment on the basis of Bieker's speculation about an uncertain result in a hypothetical contract action. If the unstated point of the argument is that there was an exclusive contract remedy, we disagree. Plaintiff was entitled to elect his remedy. *See Kabban v. Mackin, supra,* 104 Or App at 435, n 3.

---

[3] He did originally state a contract claim in this action but withdrew it.

In its appeal, Aetna adopts Bieker's arguments, and adds two of its own. The new arguments turn on asserted facts that, under the evidence, the jury was not required to and presumably did not find.

Affirmed.