**ALBANY INSURANCE COMPANY, individually, and as assignee of Ross Bros. Construction, Inc., Plaintiff,**

v.

**ROSE–TILLMANN, INC.; PWS Group; and PWS North America Ltd., Defendants.**

**ROSE–TILLMANN, INC., Third–Party Plaintiff,**

v.

**PWS GROUP; PWS North America Limited; and B.A.T. Insurance Services Inc., Third–Party Defendants.**

Civ. No. 94–517–JO.

United States District Court, D. Oregon.

March 31, 1995.

---

Guy C. Stephenson, Schwabe Williamson & Wyatt, Portland, OR, for plaintiff.

Eric J. Neiman, Paul R. Duden, Tooze Shenker Duden Creamer Frank & Hutchison, Portland, OR, for defendant Rose–Tillmann, Inc.

Christopher T. Carson, Kilmer Voorhees & Laurick, P.C., Portland, OR, for third-party defendant BAT Ins. Service, Inc.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This is an insurance coverage dispute. Ross Bros. Construction Inc. ("Ross Bros"), a construction contractor, brought this diversity action against its insurance agent, Rose–Tillmann, Inc. ("Rose–Tillmann"), and its insurer, Albany Insurance Company ("Albany"), after Albany denied Ross Bros' claim for loss sustained to a mobile crane in February 1994.

Rose–Tillmann, the agent, in turn, filed a third-party complaint against PWS Group Ltd. ("PWS Group"), PWS North America Ltd. ("PWS North"), and B.A.T. Insurance Services, Inc. ("BAT"), the other insurance agents and brokers allegedly involved in procuring the insurance policy at issue. Rose–Tillmann alleges four claims against the third-party defendants: estoppel, waiver, indemnity, and contribution.

Ross Bros has settled its claim against Albany, and Albany has been substituted as plaintiff in its capacity as the assignee of Ross Bros' claims against Rose–Tillmann. In effect, therefore, the insurer is suing the agent for the amount the insurer paid to Ross Bros, its own insured. Neither Ross Bros nor anyone else in Oregon has any interest in this litigation. Consequently, this legal battle is entirely between an Illinois insurance agency and foreign parties with no connection to Oregon.

The case is before me on PWS Group's and PWS North's motion to dismiss the third-party complaint (# 33), and BAT's motion for summary judgment (# 37). After considering the arguments of the parties and the evidence, both motions are GRANTED.

## I. THE PWS DEFENDANTS' MOTION TO DISMISS

PWS Group and PWS North move to dismiss the third-party complaint for lack of personal jurisdiction in Oregon. The facts pertinent to their motion are as follows.

PWS Group is a holding company doing business in London, England. PWS Group does not act as an insurance broker. PWS North is an operating company that trades as an insurance broker. PWS North's shares are owned by PWS Group. Neither of the PWS defendants is or has ever been licensed to do business in Oregon, neither maintains offices or employees in Oregon, and neither owns property or pays taxes or

fees in Oregon. Both PWS Group and PWS North deny ever doing business in Oregon.

The evidence shows that Rose–Tillmann, an Illinois corporation with its principal place of business in Illinois, acted as the retail broker in the insurance placement transaction. PWS North was the wholesale broker; BAT, a California corporation, was an underwriting agent; and Albany, a California company, was the insurer, providing insurance coverage for certain equipment owned by Ross Bros.

The evidence further shows that Rose–Tillmann contacted the PWS defendants in London by facsimile to request assistance in obtaining insurance coverage for Ross Bros. PWS North then contacted BAT in Los Angeles, California, which was a potential market for placement of the insurance. BAT, acting on behalf of Albany, agreed to accept certain coverage for Ross Bros. There is no evidence that PWS Group or PWS North had any contact with Ross Bros, the only Oregon party to the transaction. Indeed, the evidence demonstrates that the PWS defendants' communications concerning placement of the insurance were accomplished by telephone or facsimile between London and Illinois, where Rose–Tillmann is located, and London and California, where BAT is located.

The PWS defendants argue that under these facts, the exercise of personal jurisdiction over them in Oregon does not comport with due process requirements. Rose–Tillmann responds that jurisdiction in Oregon exists because (1) the PWS defendants agreed to obtain insurance for Ross Bros; (2) the crane that is the subject of the coverage dispute was located in Oregon at the time the insurance was issued; and (3) the loss occurred in Oregon.

### A. *Standards*

■ The plaintiff bears the burden of establishing jurisdiction. *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir.1990). Where the court decides the jurisdictional issue based on affidavits and written discovery materials, the plaintiff "is only required to make a prima facie showing of jurisdictional facts in order to defeat a motion to dismiss." *Farmers Ins. Ex.*, 907 F.2d at 912 (citation omitted); *see also* Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial ¶¶ 9:116–118, at 9–25 (1994) (herein, "Wagstaffe") ("[i]n this context, a 'prima facie' showing means that plaintiff has produced admissible evidence which, *if believed,* would be sufficient to establish the existence of personal jurisdiction" (citation omitted; emphasis in original)).

■ To establish personal jurisdiction, the plaintiff must show both that the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and that the exercise of jurisdiction comports with federal due process. *See, e.g., Gray & Co. v. Firstenberg Machinery Co., Inc.,* 913 F.2d 758, 760 (9th Cir.1990); *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1477 (9th Cir.1986). The Oregon long-arm statute confers jurisdiction "to the extent permitted by due process." *Gray & Co.,* 913 F.2d at 760; *see* O.R.C.P. 4 L.

■ Due process requires that a defendant have a "minimum level of contacts with the forum before personal jurisdiction may be exercised." *Farmers Ins. Ex.,* 907 F.2d at 913, *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). If a nonresident defendant's activities in the forum state are substantial or continuous and systematic, the court may assert general jurisdiction over a claim, even if the claim is unrelated to the defendant's forum activities. *Hirsch,* 800 F.2d at 1477. If the defendant's contacts are neither substantial nor continuous and systematic, the court must determine if "specific" or "limited" jurisdiction exists. *Farmers Ins. Ex.,* 907 F.2d at 913; *Hirsch,* 800 F.2d at 1477.

### B. *Discussion*

■ Nothing in the record suggests that the PWS defendants engaged in substantial or continuous and systematic activities in Oregon. I must, therefore, determine whether specific jurisdiction exists in Oregon. To do so, I apply the following three-part test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) the claim must be one which arises out of or results from the defendant's forum-related activities.

(3) exercise of jurisdiction must be reasonable.

*Hirsch,* 800 F.2d at 1477; *Farmers Ins. Ex.,* 907 F.2d at 913; *see generally* Wagstaffe, ¶¶ 3:116–119.

■■■ The focus in due process analysis is on the defendant's relationship to the forum and to the litigation. *Hirsch,* 800 F.2d at 1478. "Purposeful availment" analysis thus turns on whether the defendant's contacts are attributable to the defendant's *own actions* and not to the unilateral actions of some other party. *Hirsch,* 800 F.2d at 1478, *citing Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Hirsch,* the court explained that the purposeful availment prong is satisfied "when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents." 800 F.2d at 1478. It is not necessary that the defendant be physically present within or have physical contact with the forum, provided the defendant's efforts are "purposefully directed" toward forum residents. *Hirsch,* 800 F.2d at 1478 (citations omitted).

■■■ The evidence shows that PWS Group is a holding company that does not operate as an insurance broker. Rose–Tillmann has presented no evidence that PWS Group participated in the insurance placement transaction. Thus, there is no basis for finding that PWS Group "purposefully availed" itself of the privilege of conducting activities in Oregon. That Rose–Tillmann may not have known that PWS Group and PWS North were separate entities until after commencement of this litigation does not create a basis for personal jurisdiction where none otherwise exists. Accordingly, Rose–Tillmann's claim against PWS Group is DISMISSED.

■■■ Moreover, I conclude that PWS North lacks the minimum contacts with Oregon necessary to sustain personal jurisdiction. PWS North is a wholesale insurance broker, not an insurer. That fact distinguishes this case from *Hirsch,* on which Rose–Tillmann relies. In *Hirsch,* the Ninth Circuit concluded that California had personal jurisdiction over a foreign insurer because through its own deliberate action in agreeing to provide insurance coverage, the insurer had created a continuing obligation to forum residents and a substantial connection to California. *Hirsch,* 800 F.2d at 1479–80. As the PWS defendants correctly point out, the facts essential to the decision in *Hirsch* do not exist in this case.

Rose–Tillmann also relies on *Waukesha Cutting Tools v. N.J. Life Ins. Co.,* 563 F.Supp. 614 (E.D.Wis.1983). In that case, Waukesha Cutting Tools, a Wisconsin corporation, through its Wisconsin agent, KTM Associates, sought to purchase life insurance on a key employee. KTM approached Stamm Agency, a Florida insurance broker, to explore the available options for placing the insurance and to obtain competitive quotations. In turn, Stamm approached New Jersey Life Insurance Company ("NJL"), requesting a tentative offer. In the ensuing negotiations, Stamm acted as the "conduit through which was funneled information and documents between NJL and Waukesha's Milwaukee agent, KTM." 563 F.Supp. at 620.

Eventually, Stamm was named as a third-party defendant in a lawsuit Waukesha filed in Wisconsin federal district court against NJL. Stamm moved for dismissal of the third-party complaint on the ground that the court lacked personal jurisdiction in Wisconsin. The evidence showed that Stamm maintained no presence in Wisconsin, solicited no business there, and that no Stamm employee had ever set foot in Wisconsin in connection with the transaction at issue. Nonetheless, the court concluded that personal jurisdiction over Stamm in Wisconsin comported with due process, finding that

"Stamm invaded the markets of Wisconsin to conduct its business and that Stamm's penetration of the forum state for econom-

ic advantage, even absent solicitation activities, subjects it to the jurisdiction of Wisconsin's courts in the circumstances of this case." 563 F.Supp. at 621.

Despite some similarity between the circumstances in *Waukesha* and those presented here, there is a critical difference. In *Waukesha*, the evidence showed that Stamm dealt directly with the parties in Wisconsin, the forum state. In this case, PWS North dealt only with Rose–Tillmann in Illinois and BAT in California, and had no contact with Oregon whatsoever.

I conclude that PWS North did not "purposefully avail" itself of the privilege of conducting business in Oregon and does not have the minimum contacts with Oregon necessary to sustain personal jurisdiction. *See Gray & Co., supra,* 913 F.2d at 760–61. Accordingly, Rose–Tillmann's third-party complaint against PWS North is DISMISSED.

## II. *BAT'S MOTION FOR SUMMARY JUDGMENT*

BAT moves for summary judgment on each of Rose–Tillmann's third-party claims. The undisputed facts pertinent to BAT's motion are as follows.

In mid-November 1993, Rose–Tillmann sent an application for insurance coverage for Ross Bros to PWS[1]. Among other things, the application specified "automatic coverage for newly acquired property" in the sum of $250,000. The application included a schedule of equipment dated September 16, 1993. The crane at issue in this case, a 40–ton Grove RT–760, serial No. 46496, was not listed on the schedule.[2] PWS sent the application, including the equipment schedule, to BAT on November 24, 1993.

On approximately the same date, November 24, 1993, Ross Bros sent a letter to Rose–Tillmann requesting that the crane, which Ross Bros had just purchased, and several other pieces of equipment be added to the insurance schedule. On December 6, 1993, Rose–Tillmann issued a certificate of

insurance for the crane to the loss payee. Rose–Tillmann asserts that its regular business practice would have been to forward a copy of the certificate to PWS, the "upstream broker." There is no evidence that PWS forwarded a copy of the certificate to BAT.

Between December 13 and December 21, 1993, PWS informed Rose–Tillmann that coverage could only be bound effective December 22, 1993. On December 22, 1993, PWS sent a letter by facsimile to BAT, enclosing instructions from Rose–Tillmann to "[p]lease bind Ross Bros. at your quoted premium." On the same day, BAT asked GRE Insurance Group[3] to bind the account.

On January 14, 1994, BAT sent a letter by facsimile to PWS, enclosing the equipment schedule and asking for confirmation that the equipment listed was the equipment to be insured. On January 17, 1994, BAT received confirmation of the equipment schedule from PWS, with several additions. Based on that information, BAT notified GRE Insurance Group and Albany then issued the policy. The policy includes an "acquisitions clause," which provides:

> This policy is extended to cover items of a nature similar to those scheduled hereunder, the property of the Insured, *which items have been acquired subsequent to the attachment of this insurance.* In consideration of this extension the Insured hereby agrees to report in writing such acquisitions within thirty (30) days from the date acquired * * * failing which, this Company shall be relieved of all liability on such property. This Company shall be relieved of all liability on such property. This Company shall not be liable, as respects this automatic coverage, for more than $250,000 as respects any one single item. (Emphasis added.)

On February 16, 1994, the crane was damaged. Shortly after, BAT learned that in November 1993, Ross Bros had asked Rose–Tillmann to add the crane to the equipment

---

1. For purposes of BAT's motion, "PWS" refers to the PWS defendants together.

2. Ross Bros acquired the crane on or about November 23, 1993.

3. Albany is part of the GRE Insurance Group.

schedule. Rose–Tillmann had not, however, forwarded Ross Bros' November 1993, letter to PWS until February 2, 1994. PWS apparently responded by asking Rose–Tillmann for more information. There is no evidence that Rose–Tillmann provided the requested information or that Ross Bros' letter was ever forwarded to BAT.

Albany denied coverage for the crane because it was not on the equipment schedule, had not been added to the schedule by endorsement, and was not covered under the acquisitions clause because it was purchased before the effective date of the policy.

### A. Standards

 Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

 The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

### B. Discussion

#### 1. Estoppel

 The parties agree that to prove estoppel, Rose–Tillmann must establish that BAT or someone acting on BAT's behalf made a representation that was inconsistent with the express terms of the insurance policy, and that Rose–Tillmann reasonably relied upon the representation. *See Kabban v.*

*Mackin,* 104 Or.App. 422, 426–27, 801 P.2d 883 (1990).

BAT asserts that the estoppel claim must fail as a matter of law because Rose–Tillmann cannot prove any representations or conduct by BAT regarding coverage of the crane or any reliance by Rose–Tillmann. BAT points to the undisputed fact that BAT was unaware that Ross Bros owned the crane or wanted to insure it, and asserts that BAT made no representations concerning the crane to anyone.

Rose–Tillmann argues that PWS and BAT "acted as agents of one another." Rose–Tillmann then postulates that PWS' knowledge of the crane and alleged representations concerning insurance coverage for it can be attributed to BAT. The problem with that argument is that Rose–Tillmann has offered no evidence to substantiate the alleged agency relationship between PWS and BAT, and the record does not permit an inference of an agency relationship between them. *See T.W. Elec. Service,* 809 F.2d at 631 (inferences may be drawn only from underlying facts). Thus, PWS' knowledge and representations, if any, concerning the crane cannot be attributed to BAT.

Rose–Tillmann also argues that BAT was somehow responsible for Rose–Tillmann's misunderstanding of the acquisitions clause in the insurance policy, because BAT allegedly procured a policy that "differed from the specifications in the application Rose–Tillmann submitted * * *." The application, however, specifies only "automatic coverage for newly acquired property."

Although the policy as issued provides automatic coverage, Rose–Tillmann contends that it expected that coverage to apply to equipment Ross Bros acquired after the date of the equipment schedule and before issuance of the policy. BAT responds that there is no evidence that Rose–Tillmann's understanding or expectation was based on any representation or conduct by BAT. I agree.

The record contains no evidence that BAT made any representations to Rose–Tillmann concerning the terms of the policy. Whatever Rose–Tillmann's expectations concerning the applicability of the acquisitions clause to

property acquired by Ross Bros before the effective date of the policy might have been, the undisputed evidence shows that those expectations were not based on any representations or conduct by BAT. Accordingly, BAT is entitled to summary judgment on the estoppel claim.

#### 2. *Waiver*

■ Rose–Tillmann's waiver claim alleges only that BAT and the other third-party defendants "have waived any right to deny that said crane is insured * * *." Waiver, of course, is the intentional relinquishment of a known right. *See Kabban,* 104 Or.App. at 429–30, 801 P.2d 883.

■ Based on the undisputed evidence that BAT did not know of the crane or that Ross Bros sought coverage for it, BAT argues that Rose–Tillmann cannot prove that BAT intentionally relinquished a known right. Rose–Tillmann neither has responded to BAT's argument nor designated specific facts in support of the waiver claim. Accordingly, summary judgment in favor of BAT on Rose–Tillmann's waiver claim is granted.

#### 3. *Indemnity*

■ A party seeking indemnity must plead and prove (1) that the party seeking indemnity has discharged a legal obligation owed to a third party; (2) that the party from whom indemnity is sought also is liable to the third party; and (3) that as between the two, the latter ought to discharge the obligation. *See Scott v. Francis,* 314 Or. 329, 332–33, 838 P.2d 596 (1992) (citation omitted).

■ BAT correctly points out that Rose–Tillmann has failed to allege the elements of an indemnity claim. In addition, BAT argues that Rose–Tillmann's indemnity claim fails as a matter of law because (1) Rose–Tillmann cannot prove that BAT also is liable to Ross Bros; and (2) Rose–Tillmann's conduct was active while BAT's conduct, if any, was passive.

Rose–Tillmann argues that as between the two, BAT should bear the responsibility for failing to procure coverage for the crane. That argument rests on Rose–Tillmann's theory that BAT failed to procure coverage consistent with the terms set forth in Ross Bros' application. The evidence, however, does not support that theory. The application specified "automatic coverage for newly acquired property" in the amount of $250,000. The policy provides such coverage. Rose–Tillmann has submitted no evidence that it informed BAT that the requested automatic coverage was to apply to equipment not appearing on an equipment schedule that was purchased before the effective date of the policy.

It is undisputed that Ross Bros asked Rose–Tillmann to add the crane to the schedule of equipment in November 1993, and that Rose–Tillmann did not forward that request to PWS until February 2, 1993. Although it may be inferred from the evidence that Rose–Tillmann informed PWS of Ross Bros' purchase of the crane in December 1993, it is also undisputed that neither PWS nor Rose–Tillmann notified BAT of the existence of the crane before it was damaged. On this evidence, Rose–Tillmann cannot establish that its fault was merely "secondary" or "passive" and that BAT's fault was "active" or "primary," and that as between the two, BAT should bear responsibility for the loss. *See Scott,* 314 Or. at 333, 838 P.2d 596, *quoting Fulton Ins. v. White Motor Corp.,* 261 Or. 206, 210, 493 P.2d 138 (1972). Rose–Tillmann, after all, was Ross Bros' insurance agent. *See Joseph Forest Products v. Pratt,* 278 Or. 477, 480–81, 564 P.2d 1027 (1977) (insurance agent who agrees to procure insurance for another but fails to do so may be held liable based upon breach of contract or negligence). I conclude that BAT is entitled to summary judgment on Rose–Tillmann's claim for indemnity.

#### 4. *Contribution*

BAT argues that it is entitled to summary judgment on Rose–Tillmann's claim for contribution because BAT is not liable in tort to Ross Bros. O.R.S. 18.440(1), which provides for contribution among joint tortfeasors, states:

> [W]here two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right

of contribution among them even though judgment has not been recovered against all or any of them. *There is no right of contribution from a person who is not liable in tort to the claimant.* (Emphasis added.)

Focusing on the emphasized sentence, BAT argues that it cannot be liable in tort to Ross Bros, both because there is no discrepancy between Ross Bros' application and the policy, and because as a matter of law, BAT had no duty to ensure that Ross Bros understood the terms of the policy. *See Trans–World–Marine, Inc. v. Bouffard Agency,* 885 F.2d 332, 335 (6th Cir.1989) (insurance broker's only duty was to comply with insured's agent's instructions; broker owed no duty to insured to ensure that it understood the terms of the policy).

 Under Oregon law, an insurance agent or broker who agrees to procure insurance for another for a fee "owes a duty to exercise reasonable skill and care in obtaining that insurance." *Kabban,* 104 Or.App. at 432, 801 P.2d 883, *citing Joseph Forest Products,* 278 Or. at 480–81, 564 P.2d 1027. Liability for failing to procure the promised insurance may be based upon a breach of contract or negligence or both. *Joseph Forest Products,* 278 Or. at 480, 564 P.2d 1027. Under certain circumstances, an agent may also have a duty to advise the prospective insured regarding different policies or coverages. *Kabban,* 104 Or.App. at 432–33, 564 P.2d 1027.

 The agent's duty to the insured and potential liability arise out of the agency relationship between the agent and the insured. *See Joseph Forest Products,* in which the court clarified that

> "An insurance broker is the agent of the insured in negotiating for a policy, and owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting insurance * * *.
>
> "If a broker or agent *of the insured* neglects to procure insurance, or does not follow instructions, or if the policy is void

or materially defective, through the agent's fault, he is liable to his principal for any loss he may have sustained thereby." 278 Or. at 480–81, 564 P.2d 1027, *quoting* 16 Appleman, Insurance Law and Practice § 8841, at 510–514 (1968) (emphasis added; original emphasis deleted).

 In this case, there is no evidence that BAT was acting as Ross Bros' agent in the transaction, nor do the pleadings allege an agency relationship between them.[4] It is possible that BAT acted merely a conduit and not as an agent for any party. Moreover, if BAT did act as an agent for any party to the transaction, it was most likely the insurer, not the insured. *Cf.* O.R.S. 744.165(1) (insurance agent deemed to be agent of the insurer in most circumstances).

I conclude that in the absence of allegations and proof of an agency or other special relationship between BAT and Ross Bros, BAT owed no duty to Ross Bros. Consequently, there is no basis on which BAT could be held liable in tort to Ross Bros as a joint tortfeasor. BAT is, therefore, entitled to summary judgment on Rose–Tillmann's claim for contribution.

## III. *CONCLUSION*

PWS Group Ltd.'s and PWS North America Ltd.'s motion to dismiss (# 33) is GRANTED. Because this Court lacks personal jurisdiction over the PWS defendants, they are dismissed for all purposes from this lawsuit. B.A.T. Insurance Services, Inc.'s motion for summary judgment (# 37) is GRANTED. Because these rulings dispense with all claims alleged in the third-party complaint, the third-party complaint is DISMISSED.

---

4. Ross Bros has not asserted any claim against BAT and has not alleged that BAT acted as its

agent in the transaction.