Argued and submitted December 10, 1993, reversed and remanded in part; otherwise affirmed September 7, petition for review allowed December 20, 1994 (320 Or 492)
See later issue Oregon Reports

Ronald E. SHAW,
*Appellant,*

*v.*

PACC HEALTH PLAN, INC.,
an Oregon corporation;
and United Employer Benefit Corporation,
an Oregon corporation,
*Respondents,*

*and*

Holly HART,
dba Old Wives' Tales Restaurant,
*Defendant.*

(9106-04101; CA A76072)

881 P2d 143

Cynthia L. Barrett argued the cause and filed the briefs for appellant.

Richard Uffelman argued the cause for respondent United Employer Benefit Corporation. With him on the brief was Hansen & Uffelman.

Nancy S. Tauman argued the cause for respondent PACC Health Plan, Inc. With her on the brief was Hibbard, Caldwell & Schultz.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

De Muniz, J., concurring in part; dissenting in part.

## ROSSMAN, P. J.

Plaintiff appeals from the trial court's entry of judgment for defendants PACC Health Plan, Inc. (PACC) and United Employer Benefit Corporation (UEBC), contending that the court erred in dismissing plaintiff's breach of fiduciary duty claim against UEBC and in granting summary judgment to PACC on each of plaintiff's claims against PACC on the ground that the claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1001 *et seq*. We conclude that the claims against PACC are not preempted and reverse the judgment on those claims.

Defendant Holly Hart (Hart) does business as Old Wives' Tales Restaurant in Portland. She employed plaintiff as a waiter. In 1990, Hart decided to purchase health insurance for her employees. She began working with Mary Hummel, an insurance broker employed by UEBC, with the objective of securing health insurance and obtaining coverage for her employees by January 1, 1991. Hart's employees completed medical history forms in August, 1990, and Hummel submitted those, together with other application materials, to Blue Cross/Blue Shield, which, in October, 1990, approved the group and provided a quote. Hart and Hummel continued to shop for insurance, and on December 26, 1990, Hummel gave Hart PACC's application form; Hart decided to complete and submit the PACC application, because PACC had a lower deductible than Blue Cross/Blue Shield. Hart completed the application and, together with the medical history forms completed in August, 1990, but redated December 30, 1990, Hummel submitted the package to PACC. There is a dispute about whether Hummel told Hart to have her employees update the medical histories or told her merely to change the dates. The forms were not updated before they were submitted to PACC. PACC advised Hummel that it would process the application immediately, and UEBC assured Hart that coverage would begin January 1, 1991.

PACC received the forms on January 2, 1991. The application was preliminarily approved by a reviewer and forwarded to an underwriting supervisor for routine review. Before it had been finally approved, however, plaintiff, one of Hart's employees, became ill and was hospitalized on January 9, 1991. The diagnosis was a respiratory condition known as

pneumocystis, a condition that occurs in people who have contracted the Human Immunodeficiency Virus (HIV). Plaintiff tested positive for HIV.

When, on January 10, 1991, Hart learned that plaintiff was ill, she called Hummel to inquire as to the status of the application. The application had yet to be approved. While it was pending, a PACC nurse who visits the hospital daily to pick up claim forms, learned that plaintiff was ill. From the diagnosed condition, she suspected that plaintiff might have Acquired Immune Deficiency Syndrome (AIDS), and she called the underwriting supervisor. The supervisor reexamined Hart's application and noticed that the medical history forms submitted with the application had not been completed within 45 days of the application date, as required. PACC requested that the group provide current history statements. Hart's employees completed new forms, which were submitted by January 15, 1991. Plaintiff's new form reflected his condition as of December 31, 1990. On January 17, 1991, Hart learned that PACC had denied the application, purportedly because the updated health history forms revealed uninsurable conditions of employees other than plaintiff and because the dates on the original medical history forms had been altered.

As a member of the group that filed the application for insurance, plaintiff filed this complaint alleging state common law claims against Hart, UEBC and PACC. The complaint alleged no claims under ERISA. Plaintiff alleged that PACC and UEBC had conspired to create a pretextual basis for denying the application after learning that plaintiff was HIV positive. Plaintiff alleged that, in so doing, both PACC and UEBC negligently processed the application, and that PACC breached its promise to provide insurance coverage effective January 1, 1991. Plaintiff further alleged, in his third claim for relief, that in denying the application, PACC had acted in bad faith and that UEBC had breached fiduciary duties, and that both had acted in violation of an administrative rule that prohibits companies from classifying asymptomatic HIV as a preexisting condition when processing an insurance application. All of plaintiff's claims are implicitly based on the assumption that, because of the administrative rule, had the application been accepted and had coverage been

effective January 1, 1991, plaintiff would have been an insured and his then asymptomatic HIV condition would have been a covered condition.

Plaintiff settled with Hart before trial. The trial court granted PACC's motion for summary judgment on the ground that all three claims against it are preempted by ERISA. Trial proceeded against UEBC only, on the claims that it had negligently processed the application and had breached a fiduciary duty by denying it in bad faith. After plaintiff presented his evidence, the court granted UEBC's motion to dismiss the breach of fiduciary duty claim. The claim for negligent processing went to the jury, which rendered a verdict for UEBC.

Our first inquiry on appeal is whether plaintiff's claims against PACC are preempted by ERISA. If they are not, then the court erred in granting summary judgment to PACC. As background, we draw extensively from opinions of the United States Supreme Court to explain ERISA, its purpose, and the provisions that are relevant to the question of preemption. ERISA is a comprehensive federal law designed to promote and regulate the interests of employees and their beneficiaries in employee pension and benefit plans.[1] *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 90, 103 S Ct 2890, 77 L Ed 2d 490 (1983). The statute imposes participation, funding and vesting requirements on pension plans. It also sets various standards, including rules concerning reporting, disclosure and fiduciary responsibility for both pension and welfare plans. As part of this closely integrated regulatory system, Congress included various safeguards to preclude abuse, among them ERISA section 514(a), 29 USC § 1144(a), ERISA's broad preemption provision, section 510, 29 USC § 1140, which proscribes interference with rights protected by ERISA, and section 502(a), 29 USC § 1132(a), a civil enforcement scheme that " 'is one of the essential tools for accomplishing the stated purposes of ERISA.' " *Ingersoll-Rand v. McClendon*, 498 US 133, 137, 111 S Ct 478, 112 L Ed 2d 474 (1990), *quoting Pilot Life Ins. Co. v. Dedeaux*, 481 US 41, 52, 54, 107 S Ct 1549, 95 L Ed 2d 39 (1987).

---

[1] The alleged plan at issue here would be an "employee welfare benefit plan," which includes any program that provides benefits for contingencies such as illness, accident, disability, death or unemployment. 29 USC § 1002(1).

Section 514(a), 29 USC § 1144(a), preempts

"any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"

covered by ERISA. Preemption has been broadly construed to apply to any and all state tort and contract claims that relate to or depend on the existence of an employee benefit plan. *Ingersoll-Rand v. McClendon, supra.* Accordingly, if Hart had an ERISA plan, if plaintiff was a participant in that plan, and if plaintiff's claims relate to or are dependent on the existence of an ERISA plan, then his claims against PACC should have been brought under ERISA and may not be brought as state common law claims.

■■ Our first inquiry, then, is whether Hart had an ERISA plan. Under ERISA, a subject plan is

"any plan, fund, or program *established* or maintained by an employer * * * for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits[.]" 29 USC § 1002(1). (Emphasis supplied.)

ERISA's rights and duties are limited to "established" plans. Whether or not a plan has been "established" is a question of fact. The plan need not be in writing, provided it is a "reality," which requires that it be possible for a reasonable person to ascertain from the surrounding circumstances the intended benefits, beneficiaries, source of financing and procedure for receiving benefits. *See James v. National Business Systems, Inc.,* 924 F2d 718, 720 (7th Cir 1991); *Donovan v. Dillingham,* 688 F2d 1367, 1370 (11th Cir 1982). The burden of showing that a plan has been established rests on the party seeking to use preemption as a defense. *Kanne v. Connecticut General Life Ins. Co.,* 867 F2d 489 (9th Cir 1988); *Marshall v. Bankers Life & Casualty Co.,* 2 Cal 4th 1045, 10 Cal Rptr 2d 72, 832 P2d 573 (1992).

■ Plaintiff contends that, here, no ERISA plan was established, because there was no insurance. PACC asserts that the insurance is not the plan, but merely the benefit component of it; thus, regardless of whether the health insurance benefits ever became available, a plan had been established, because Hart had decided to provide health insurance to her employees and had taken every step within

her ability to purchase insurance. However, as the Seventh Circuit said in *James v. National Business Systems, Inc.,* *supra,* apart from the ascertainability of the terms of a plan, it must be shown that the plan was *in effect*, and not just for future adoption.

■ In *James*, the question was whether the plaintiff was a participant in a pension plan adopted by his former employer. The employer contended that there was no plan, or that if there was one, the plaintiff had never enrolled in it. There had been much work by the employer and consultants toward the designing of a pension plan, and most of the details had been worked out, including the amount of benefits, when they would vest, which executives would participate in the plan and the method of funding, which would be by whole life insurance policies on the lives of the participants. As contemplated, the plan would be a pension plan within the meaning of ERISA. The court held, nonetheless, that the fact that the details of the plan could be ascertained and would make the plan subject to ERISA was not enough:

> "The other and prior criterion is that the plan was intended to be in effect, and not just be something for future adoption." 924 F2d at 720.

In other words, a plan must be more than a prospective contingency. A plan intended to come into effect on a future date, no matter how detailed, is not a plan for purposes of ERISA.

■ Hart had taken many of the steps necessary for the purchase of insurance for her employees, including what the benefits would be, who would benefit, the source of financing and the payment of premiums; however, the goal toward which her conduct was directed, obtaining insurance, never became a reality. There is no indication that, in the event she was unable to purchase insurance, Hart intended to be self-insured to cover her employees' medical expenses. Although we agree with PACC that the insurance itself was not the plan, in view of the fact that insurance was to be the only benefit provided under the plan, we conclude that the establishment of the plan was contingent on obtaining the insurance. Hart had hoped that by January 1, 1991, she would have health insurance for her employees; however, her intentions were thwarted when PACC declined to accept the application

for insurance. Until she actually *had* the insurance, her employee health insurance plan was only a contingency, not a reality. We conclude that PACC has failed to show that Hart established an employee benefit plan.

 Even assuming, however, that the efforts that Hart made toward the purchase of insurance were sufficient to give rise to an ERISA plan, we conclude, nonetheless, that there is no preemption. In section 514(a) of ERISA, 29 USC § 1144(a), Congress provided that ERISA

> "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"

subject to ERISA. The preemption clause is "conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 US 52, 58, 111 S Ct 403, 112 L Ed 2d 356 (1990). It establishes as an area of exclusive federal concern the subject of every state law that "relates to" an employee benefit plan governed by ERISA. A law "relates to" an employee benefit plan not only if it deals directly with plan terms, conditions or administration, but if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, supra*, 463 US at 96-97. Under this "broad common-sense meaning," a law may "relate to" a benefit plan, and thereby be preempted even if the law is not specifically designed to affect such a plan, or the effect is only indirect. If, in order to prevail on a claim, the plaintiff must prove the existence of a plan, *i.e.*, if the existence of a plan is a "critical factor" in establishing liability, then the claim is preempted, because the cause of action then "relates to" an ERISA plan. *Ingersoll-Rand v. McClendon, supra*, 498 US at 140.

 *Ingersoll-Rand v. McClendon, supra*, represents a typical ERISA preemption case. The plaintiff filed an action for wrongful discharge against his employer, alleging that the reason for his termination was the employer's desire to avoid contributing to an ERISA pension fund. The Texas Supreme Court held that, notwithstanding the traditional employment-at-will doctrine, under Texas law a plaintiff could recover in a wrongful discharge action if it were established that the principal reason for the termination was the employer's desire to avoid contributing to the employee's pension fund. The Texas court held that the case was not preempted by ERISA, because the plaintiff was not seeking

lost pension benefits but was instead seeking lost future wages, mental anguish and punitive damages as a result of the wrongful discharge.

The United States Supreme Court reversed, holding that, because, in order to have prevailed in his cause of action, the plaintiff had to plead, and the court had to find, that an ERISA plan existed and that the employer had a pension-defeating motive in terminating the employment, the existence of the plan is a critical factor in establishing liability and the cause of action "relates to" an ERISA plan.

As an additional reason for holding that the cause of action was preempted, the court held that the claim constituted a violation of section 510, which prohibits the discharge of a plan participant "for the purpose of interfering with the attainment of any right * * * under the plan," and for which the plaintiff could have filed an ERISA civil action pursuant to section 502(a).

Another significant category of preemption cases includes those that involve allegations of processing errors by insurers. In *Pilot Life Ins. Co. v. Dedeaux, supra,* the plaintiff brought common law claims against the insurance company that provided long-term disability benefits for employees injured on the job under an ERISA plan, alleging that the company had breached contractual duties and acted tortiously in failing to provide benefits under the insurance policy. The Supreme Court held that the common law claims for alleged improper processing of the claim for benefits under an ERISA-regulated plan were preempted, because the claims were dependent on the existence of a plan. Significant to the Court's holding was its conclusion that ERISA's civil enforcement provisions were intended to provide the exclusive remedies for ERISA plan participants and beneficiaries asserting improper processing of benefit claims.

■ With this context in mind, we have little difficulty concluding that plaintiff's claims for common law negligence, breach of contract and breach of fiduciary duty are not preempted. Unlike in *Ingersoll-Rand v. McClendon, supra,* here the existence of an ERISA plan is not critical to plaintiff's claims. The claims are based on the theory that PACC breached its agreement to provide insurance and that it acted

negligently in the processing of the application for insurance.[2] It need not be shown, to prevail in those claims, that Hart had established an employee welfare benefit plan; the inquiry is whether Hart and her employees had an agreement with PACC and whether PACC breached that agreement. This is not, as PACC asserts or as was the case in *Pilot Life Insurance Co. v. Dedeaux, supra,* a claim for benefits under a plan or a contention that processing errors were made. The success or failure of plaintiff's claims does not depend on the existence of an agreement between plaintiff and Hart that Hart would provide health insurance. The gist of the complaint is that PACC's conduct defeated Hart's purchase of insurance. We conclude that plaintiff's common law claims have no connection to an ERISA plan and do not depend for their success on the existence of a plan.

The other major consideration is the fact that the civil enforcement provision of ERISA, section 502(a), does not protect the worker or his employer from the conduct of an entity that is not a provider under a plan; nor should it. PACC chose not to be a provider of insurance under the alleged plan. Plaintiff's claims against PACC by their very nature arise from circumstances that occurred outside and beyond the plan. That reason alone is sufficient to support our holding that the claims against PACC are not preempted.

Our conclusion is also supported by the United States Supreme Court's statements concerning the purposes of section 514(a). Preemption was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among states or between states and the federal government. Otherwise, the inefficiencies created could work to the detriment of the plan beneficiaries. *FMC Corp. v. Holliday, supra,* 498 US at 60. If the allowance of the state-based action would subject plans and plan sponsors to burdens like those Congress sought to foreclose through section 514(a), then the state action is foreclosed. Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop

---

[2] We are not called upon in this appeal to pass on the substantive validity of the claims themselves. The only issue on appeal is preemption.

different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement. *Ingersoll-Rand v. McClendon, supra,* 498 US at 142. Here, where the meaning or application of plan documents is not at issue, there is no risk that our application of the Oregon common law of contracts or negligence will impose additional burdens on plans or plan sponsors. We conclude, once again, that these claims are not preempted, because plaintiff is seeking to enforce rights that arise outside of an ERISA plan and do not relate to it.

In his second assignment of error, plaintiff contends that the trial court erred in dismissing his claim for breach of fiduciary duty against UEBC. Plaintiff contends that, as Hart's agent, UEBC had a fiduciary duty to process the insurance application in good faith and that, acting in concert with PACC, UEBC breached that duty when it "delayed and obfuscated" the application process. That delay allegedly permitted PACC to develop a pretextual basis for denying the application that concealed the true reason for the denial, which was that plaintiff was suffering from an HIV-related condition. The claim is alleged as a tort, not as a breach of contract.

After plaintiff had put on his evidence, UEBC asked the trial court to dismiss the claim, contending that the evidence did not establish any wrongdoing by UEBC. The court found that there had been no "conspiracy here to keep this victim out of coverage," and granted the motion.

*Georgetown Realty v. The Home Ins. Co.,* 313 Or 97, 831 P2d 7 (1992), stands for the general principle that a party to a contract may have a tort claim against the other party for the negligent performance of the terms of the contract, if the allegedly negligent party is subject to a standard of care independent of the terms of the contract. In *Kabban v. Mackin,* 104 Or App 422, 432, 801 P2d 883 (1990), we held that an insurance agent owes to the insured "a duty to exercise reasonable skill and care" in obtaining insurance. As plaintiff concedes, the jury heard and rejected plaintiff's contention that UEBC negligently injured plaintiff. That

determination is not assigned as error on appeal. However, relying on *Georgetown*, plaintiff contends that, apart from any liability for general negligence, UEBC had a separate fiduciary duty that arose out of UEBC's status as an agent to Hart and that that duty gives rise to a distinct claim, characterized by plaintiff as breach of fiduciary duty by "bad faith denial."

■ Initially, we note that the trial court held that there was no evidence from which it could be found that UEBC had acted wrongfully or in concert with PACC in the processing of the claim. The assignment of error does not challenge that specific and dispositive determination. The additional flaw in plaintiff's reasoning is his assumption, without proof, that UEBC was Hart's agent and that, in that capacity, UEBC acted as a fiduciary. ORS 744.165 provides that

> "any person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured."

With regard to the solicitation and procurement of the application of insurance, UEBC was PACC's agent, *not* Hart's. We decline to hold that, as a matter of law, an insurance broker is a fiduciary to the insured. The trial court did not err when it granted UEBC's motion to dismiss.

Reversed and remanded as to claims against PACC; otherwise affirmed.

**De MUNIZ, J.,** concurring in part; dissenting in part.

I agree with the majority that the trial court did not err in granting UEBC's motion. I do not agree that the claims against PACC were not preempted by ERISA and would affirm the trial court's summary judgment in favor of PACC.

The majority recognizes that an employee benefit plan is a reality if the intended benefits, beneficiaries, source of financing and procedure for receiving benefits can be ascertained from the surrounding circumstances. *James v. National Business Systems, Inc.*, 924 F2d 718, 720 (7th Cir 1991). Despite that, the majority concludes that, because

PACC "thwarted" Hart's intentions to provide insurance by January 1, 1991, there was no plan here. That conclusion equates recognition of a source of financing with identifying a particular insurer, and I do not agree with that interpretation. Hart's plan was a reality, because it was clear from the circumstances that the plan would be financed by insurance, whether by Blue Cross, PACC or some other insurer.

Hart's plan met the test for an established plan that the majority cites from *James v. National Business Systems, Inc., supra*, 924 F2d at 720:

> "The other and prior criterion is that the plan *was intended to be in effect*, and not just be something for future adoption." (Emphasis supplied.)

It is clear that Hart intended the plan to be in effect by January 1, 1991, and that, as PACC contends, she did all that she could to provide insurance by that date. Hart promised her employees that, through a health insurance policy, she would provide basic health benefits under the Oregon Health Plan. She had the employees fill out health statements by October in order to obtain coverage. Blue Cross approved the group, but Hart continued to discuss other insurance plans with the agent. On December 26, PACC application forms were given to the employer, and she was told that there would be an effective date of January 1, 1991, for the policy. PACC cashed Hart's premium check, but then denied coverage on January 17, 1991.

The majority's conclusion that PACC's rejection of the application means that the plan "was only a contingency, not a reality," 130 Or App at 39, makes establishment of a plan dependent on an insurer's actions. However, a plan is established by an *employer*. 29 USC § 1002(1). The fact that coverage was not provided by January 1, 1991, as Hart promised, does not mean that no employee plan existed. Rather, it means that the *employer* had not provided the benefits of the plan.

Furthermore, I cannot agree with the majority that plaintiff's claims for common law negligence, breach of contract and breach of fiduciary duty are not preempted. Under 29 USC § 1144(a), a claim is preempted for "all State laws insofar as they may now or hereafter relate to any employee

benefit plan * * *." "Relate to" means "a connection with or reference to such a plan." *Ingersoll-Rand v. McClendon,* 498 US 133, 139, 111 S Ct 478, 112 L Ed 2d 474 (1990); *Shaw v. Delta Air Lines, Inc.,* 463 US 85, 96, 103 S Ct 2890, 77 L Ed 2d 490 (1983).

In *Ingersoll-Rand v. McClendon, supra,* the employee filed a wrongful discharge action asserting state law tort and contract theories, alleging that he was fired due to the employer's wish to avoid contributing to his pension fund. In holding that the employee's claims were preempted, the Supreme Court rejected, *inter alia,* the employee's argument that the pension plan was irrelevant because all that was at issue was the employer's improper motive. The court noted that, under the state court's analysis of the case, there "simply is no cause of action if there is no plan." 498 US at 140.

The majority reasons that plaintiff's claims are not related to a plan because they

"are based on the theory that PACC breached its agreement to provide insurance and that it acted negligently in the processing of the application for insurance. It need not be shown, to prevail in those claims, that Hart had established an employee welfare benefit plan; the inquiry is whether Hart and her employees had an agreement with PACC and whether PACC breached that agreement." 130 Or App at 40-41. (Footnote omitted.)

I do not understand how the "agreement" can be anything but insurance under the plan, and, as in *Ingersoll-Rand v. McClendon, supra,* any agreement that plaintiff might have had with PACC was dependent on Hart's agreement. Indeed, plaintiff himself acknowledges as much when he states that he "was a third-party beneficiary of a proposed contract for group health insurance between his employer and PACC Health Plan, Inc." Without Hart's plan to provide medical coverage to her employees, plaintiff would have no claim against PACC. I would hold that plaintiff's claims against PACC are related to the plan and preempted by ERISA.