Argued and submitted May 1, decision of the Court of Appeals affirmed, judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings December 29, 1995

Ronald E. SHAW,
by and through Thomas Zollner,
Personal Representative of the
Estate of Ronald E. Shaw, deceased,
*Respondent on Review,*

*v.*

PACC HEALTH PLAN, INC.,
an Oregon corporation,
*Petitioner on Review,*

*and*

UNITED EMPLOYER BENEFIT CORPORATION,
an Oregon corporation,
*Respondent,*

*and*

Holly HART,
dba Old Wives' Tales Restaurant,
*Defendant.*

(CC 9106-04101; CA A76072; SC S41799)

908 P2d 308

I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause for petitioner on review. With him on briefs were Chrys A. Martin and Lori R. Metz.

Cynthia L. Barrett, Portland, argued the cause and filed the brief for respondent on review.

Jeffrey C. Carey, Portland, filed a brief on behalf of *amici curiae* American Council of Life Insurance, Health Insurance Association of America, and Standard Insurance Company. With him on the brief were Phillip E. Stano and Theresa L. Sorota, Washington, D.C.

CARSON, C. J.

## CARSON, C. J.

The issue in this case is whether the trial court correctly granted the motion of defendant PACC Health Plan, Inc. (hereinafter "PACC"), for summary judgment on the ground that plaintiff's[1] state claims were preempted by the federal Employee Retirement Income Security Act (ERISA). 29 USC § 1001 *et seq*.

Defendant Holly Hart (hereinafter "employer") operates a restaurant in which she employed plaintiff as a server. In 1990, employer decided to purchase health insurance for her employees, and hoped to obtain health coverage for her employees by January 1991. She began working with an insurance broker, Mary Hummel (hereinafter "the broker"), who was employed by defendant United Employer Benefit Corporation (hereinafter "UEBC"), to investigate various plans. In August 1990, the employees completed medical history forms, which employer gave to the broker. The broker submitted those medical history forms, along with other application materials, to one insurance carrier. That carrier approved the group's application in October 1990, and provided an estimate for the cost of coverage.

Over the next two months, employer reviewed that carrier's plan information, as well as information from several other carriers, including PACC. In comparing the plans, employer realized that the first carrier's deductible for each employee was twice as high as PACC's, despite the fact that both carriers would charge employer identical premiums for each employee. Consequently, on December 26, 1990, the broker gave employer an application form for PACC's health plan. Employer completed the application form, but the employees did not complete updated medical history forms. Instead, employer redated the medical history forms that the employees had completed in August 1990 to December 1990. The broker then submitted the application and the redated medical history forms to

---

[1] The original plaintiff in this action died on August 7, 1993. On October 21, 1994, the Court of Appeals entered an order allowing this action to be continued through plaintiff's personal representative. We refer to the original plaintiff as "plaintiff" throughout this opinion.

PACC.[2] The broker told employer that her employees' health coverage should begin by January 1, 1991.

PACC received employer's application and the employees' medical history forms on January 2, 1991. A senior medical underwriter preliminarily approved the application and forwarded it to her supervisor, the director of underwriting, for routine review. However, before the application had received final approval, plaintiff, one of the employees who was to be covered under the proposed plan, became ill and was hospitalized on January 9, 1991. His diagnosis was a respiratory condition known as pneumocystis, a condition that often occurs in people with Acquired Immune Deficiency Syndrome (AIDS). Plaintiff tested positive for Human Immunodeficiency Virus (HIV) at that time. On January 10, 1991, when employer learned that plaintiff was hospitalized, she called the broker and asked whether the application had been approved. The broker told her that it still was pending.

On either January 10 or 11, 1991, a nurse employed by PACC, who visited the hospital daily to pick up PACC's claim forms and to monitor the quality of care provided to PACC's insureds, learned that plaintiff was ill and suspected that plaintiff might have AIDS. The nurse called PACC's director of underwriting, whom she told about her suspicions.[3] The director reexamined employer's application and noticed that the medical history forms submitted with the application had not been completed within 45 days of the application date, as PACC required. PACC requested that each member of the group provide an updated medical history form.

The employees completed new forms on January 15, 1991, which the broker submitted to PACC. Plaintiff's new form was dated December 31, 1990, and reflected his condition as of that date, because employer thought that plaintiff's coverage should be effective as of January 1,

---

[2] According to employer's testimony at trial, employer redated the forms at the broker's direction. However, the broker denied knowing that the old forms were outdated at the time that she submitted those forms to PACC.

[3] It is not entirely clear from the record how PACC's nurse found out about plaintiff's condition. It appears from testimony at trial that the nurse probably picked up a claim form completed for plaintiff, which listed PACC as plaintiff's insurance provider.

1991. On January 16, upon final review, PACC decided to deny employer's application for insurance coverage, allegedly for reasons other than plaintiff's medical condition.[4] Employer learned of the denial on January 17, 1991. PACC did not cover any claims related to plaintiff's hospitalization in January 1991.

Plaintiff filed this complaint, alleging common law claims against employer, UEBC, and PACC. Plaintiff claimed that: 1) PACC breached its oral promise to employer, made through the broker, to provide insurance coverage by January 1, 1991; 2) PACC and UEBC negligently processed employer's application; 3) PACC and UEBC denied employer's application in bad faith because, after learning that plaintiff was HIV positive, they conspired to create a pretextual basis for denying employer's application; and 4) employer breached her oral promise to plaintiff that insurance coverage would be provided effective January 1, 1991.

Before trial, plaintiff settled his claim against employer. The trial court granted PACC's motion for summary judgment on the ground that plaintiff's claims against PACC were preempted by ERISA. Trial proceeded against UEBC on the claims that UEBC had negligently processed the application and that it had breached a fiduciary duty by denying employer's application for insurance in bad faith. At the conclusion of plaintiff's case, the court granted UEBC's motion to dismiss the claim for bad faith denial of the application and breach of fiduciary duty. The claim for negligent processing of employer's application went to a jury, which returned a verdict for UEBC.

Plaintiff appealed the order granting PACC's motion for summary judgment and the order granting UEBC's motion to dismiss the claim for bad faith denial of the application and breach of fiduciary duty. The Court of Appeals affirmed the dismissal of the claim for bad faith denial and breach of fiduciary duty against UEBC, but

---

[4] PACC's purported reasons for denial are not clear from the record. There was conflicting testimony as to which of several factors, not including plaintiff's medical condition, provided the basis for PACC's denial of employer's application.

reversed the order granting PACC's motion for summary judgment. *Shaw v. PACC Health Plan, Inc.*, 130 Or App 32, 43, 881 P2d 143 (1994). As to the order granting the motion for summary judgment, a majority of the panel held that plaintiff's claims "are not preempted, because plaintiff is seeking to enforce rights that arise outside of an ERISA plan and do not relate to it." *Id.* at 42. One judge dissented, maintaining that plaintiff's common law claims were preempted by ERISA. *Id.* at 43 (De Muniz, J., concurring in part and dissenting in part).

PACC petitioned for review in this court, arguing that plaintiff's claims against it were preempted. We allowed PACC's petition for review and now affirm the decision of the Court of Appeals.

Article VI, paragraph 2, of the United States Constitution, the "Supremacy Clause," provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

■ The Supremacy Clause gives Congress the power to preempt state law. Federal preemption may occur "by express provision, by implication, or by a conflict between federal and state law." *New York Blue Cross v. Travelers Ins.*, 514 US ___, 115 S Ct 1671, 1676, 131 L Ed 2d 695 (1995). In this case, PACC argues that Congress expressly preempted plaintiff's common law claims through the preemption provision contained in 29 USC section 1144, below.[5] We are faced, therefore, with a question of statutory interpretation: We must determine whether Congress intended to preempt the type of claim brought here when it enacted ERISA. *See Shaw v. Delta Air Lines, Inc.*, 463 US 85, 95, 103 S Ct 2890, 77 L Ed 2d 490 (1983) ("In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue."); *Wilson v. Piper Aircraft Corporation*, 282 Or 61,

---

[5] Because Congress included an express preemption provision in ERISA, we consider only that method of federal preemption in this opinion.

80, 577 P2d 1322, *on recons* 282 Or 411, 579 P2d 1287 (1978) (Linde, J., concurring) ("The question of federal preemption is essentially one of statutory interpretation or, if one prefers, of Congressional intent." (internal quotation marks omitted)).

29 USC section 1144(a), the ERISA preemption provision, provides, in part:

"[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan described in section 1003(a) of this title * * *."* (Emphasis added.)

29 USC section 1003(a) provides, in part:

"[T]his subchapter shall apply to any employee benefit plan *if it is established or maintained —*

"(1) *by any employer* engaged in commerce or in any industry or activity affecting commerce[.]" (Emphasis added.)

An "employee welfare benefit plan" is defined, in part, to be

"any plan, fund, or program *which was heretofore or is hereafter established or maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise,* (A) medical, surgical, or hospital care or benefits * * *." 29 USC § 1002(1). (Emphasis added.)

In this case, the parties disagree whether employer's actions "established" an ERISA employee benefit plan at all.[6] If employer did not establish such a plan, ERISA does not preempt any of plaintiff's common law claims against PACC. PACC argues that employer had taken the steps necessary to "establish" an employee benefit plan for her employees, in the form of health insurance, even though PACC ultimately rejected the application for coverage, and that there was therefore an "established"

---

[6] According to ERISA's definition section, there are three types of employee benefit plans: an "employee welfare benefit plan," an "employee pension benefit plan," and a plan that is a combination of both an employee welfare benefit plan and an employee pension benefit plan. 29 USC § 1002(3). This case is concerned with an "employee welfare benefit plan."

plan that triggered ERISA's preemption provision. Plaintiff, on the other hand, argues that a plan was not "established," because PACC had not given final approval to employer's application for coverage, and, thus, no actual plan ever existed. These competing arguments require us to determine what Congress meant when it referred to an employee benefit plan "established * * * by [an] employer."

■■ As noted, ERISA is a federal statute. Therefore, our task is to identify and carry out the intent of Congress when it enacted ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 US 41, 45, 107 S Ct 1549, 95 L Ed 2d 39 (1987) ("The purpose of Congress is the ultimate touchstone." (quoting *Allis-Chalmers Corp. v. Lueck*, 471 US 202, 208, 105 S Ct 1904, 85 L Ed 2d 206 (1985))). In doing so, we follow the methodology generally used in ERISA preemption cases by the Supreme Court of the United States. That is, "we begin * * * with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *New York Blue Cross*, 115 S Ct at 1677.

We begin our analysis with the wording of the statute, specifically the word "established," together with the assumption, common to many statutory interpretation decisions of the Supreme Court, "that the ordinary meaning of that language accurately expresses the legislative purpose." *FMC Corp. v. Holliday*, 498 US 52, 57, 111 S Ct 403, 112 L Ed 2d 356 (1990) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 US 189, 194, 105 S Ct 658, 83 L Ed 2d 582 (1985)). There are several ordinary meanings for the word "establish," including "to make firm or stable," "to place, install, or set up in a permanent or relatively enduring position," and "to bring into existence, create, make, start, originate, found, or build usu[ally] as permanent or with permanence in view." *Webster's Third New Int'l Dictionary*, 778 (unabridged ed 1993).

■ From the foregoing, we believe that it is fair to state that ordinarily the word "establish" means to set something in place with the goal of making it long-lasting or permanent. That definition in turn suggests that an employee benefit plan actually must be in place before it is "established," causing ERISA to preempt any common law claims

relating to the plan. That definition further suggests that it refers to the completion of the final steps in constructing something that will last for a significant time. It does not appear to refer to negotiations preceding the execution of an agreement. In short, Congress' use of the word "established" suggests that an employee benefit plan is not "established" and, therefore, does not exist for the purposes of ERISA, unless the plan is in place. In this case, the parties had engaged in preliminary steps that would have resulted in the establishment of a plan if the agreement to purchase insurance had been completed. However, because PACC denied employer's application, an employee benefit plan was never in place, *i.e.*, it never was "established."

 Moreover, ERISA provides that an employee welfare benefit plan comes into existence when a "plan, fund, or program * * * is * * * established * * * *through the purchase of insurance or otherwise.*" 29 USC § 1002(1). (Emphasis added.) That phrasing suggests that an employer can "establish" an employee welfare benefit plan through the purchase of insurance or some other comparable arrangement.[7] Therefore, an employer's mere intention to purchase insurance, or even preliminary steps toward that end, are not sufficient to "establish" an employee benefit plan. Under the plain words of 29 USC section 1002, a plan that is solely in the form of insurance is not "established" for the purposes of ERISA unless and until the employer has purchased the insurance. Consequently, in this case, employer did not "establish" a plan, because the purchase of insurance never took place.

 Our analysis of text also includes relevant decisions by the Supreme Court of the United States. Although the Supreme Court has rendered several decisions pertaining to the scope of ERISA preemption, it has not examined the meaning of the word "established" in the context of

---

[7] The language "or otherwise" encompasses other noncontractual or comparable arrangements that result in employer plan liability with the same consequences as the purchase of insurance. Because plaintiff's claim in this case centers on actions by PACC that prevented employer from purchasing insurance from PACC, we focus on ERISA's language that a "plan * * * is * * * established * * * through the purchase of insurance."

employee benefit plans. Consequently, the Supreme Court's case law on ERISA preemption does not further our textual analysis.[8]

We now turn to the structure of ERISA, to determine whether any other provisions of the Act assist in our interpretation of what Congress meant by the word "established" in the context of employee benefit plans. *See Massachusetts v. Morash*, 490 US 107, 115, 109 S Ct 1668, 104 L Ed 2d 98 (1989) (Supreme Court looks to provisions of whole law when interpreting federal statutes). Some of the text contained in ERISA's reporting and disclosure provisions is helpful to our analysis, as we shall explain below.

ERISA's reporting and disclosure provisions impose a duty of disclosure upon employers who have established employee benefit plans, requiring employers to furnish plan participants with a summary plan description. 29 USC § 1021(a)(1). Employers also must file the summary plan description with the Secretary of Labor. 29 USC § 1021(b)(1). Section 1022(b) sets forth the information that employers must include in the summary plan description, such as information concerning the plan's administration, eligibility, and benefit requirements; claim procedures and

---

[8] Because the Supreme Court has not spoken to the issue, we ordinarily would next look to the federal courts to determine whether they have interpreted the same issue under ERISA as that presented here. When the federal courts are well-settled on a specific interpretation, this court may choose to follow that interpretation, if the underlying reasoning is persuasive. However, federal court decisions, other than those issued by the Supreme Court, are not binding on this court. *Van De Hey v. U.S. National Bank*, 313 Or 86, 95 n 9, 829 P2d 695 (1992); *Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 549, 577 P2d 477 (1978).

The germinal federal case addressing whether a plan is "established" for ERISA preemption purposes is *Donovan v. Dillingham*, 688 F2d 1367 (11th Cir 1982). In *Donovan*, the court determined that "[a] decision to extend benefits is not the establishment of a plan or program. * * * [I]t is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." *Id.* at 1373. That test has been accepted widely by the federal courts. *See Kenney v. Roland Parson Contracting Corp.*, 28 F3d 1254, 1257 (DC Cir 1994) ("Every circuit that has since been required to decide whether, on the particular facts before it, a pension plan has come into being has adopted the [*Donovan*] approach."). *Donovan's* approach supports our conclusion that, in this case, employer did not "establish" an ERISA plan. As the Court of Appeals stated, "the goal toward which [employer's] conduct was directed, obtaining insurance, *never became a reality*," because employer never purchased insurance from PACC. *Shaw v. PACC Health Plan, Inc.*, 130 Or App 32, 38, 881 P2d 143 (1994). (Emphasis added.) Consequently, employer never "established" an employee benefit plan for the purposes of ERISA.

remedies under the plan; and circumstances that may result in disqualification, ineligibility, or denial of benefits. The summary plan description also must contain "the source of financing of the plan and *the identity of any organization through which benefits are provided.*" 29 USC § 1022(b). (Emphasis added.) That wording is helpful to our interpretation of the word "established," because it suggests that an employee benefit plan exists only if the employer can identify its benefit provider. If no provider exists, the employer would not be able to comply with ERISA's reporting and disclosure requirements.

In this case, PACC never provided benefits to the employees, and an agreement never was in place that obligated PACC to do so. Instead, PACC rejected employer's application for coverage. Nor did employer have any other provider in January 1991. If we were to conclude that employer had "established" an employee benefit plan, employer would be unable to comply with ERISA's requirement that employers who have established plans must disclose the identity of their benefit providers. Consequently, the fact that employer had no benefit provider supports our conclusion that employer never "established" a plan.

ERISA's reporting requirements also require publication of an annual report with respect to employee benefit plans. 29 USC § 1023(a)(1)(A). Section 1023(e) specifically addresses the situation in which an insurance company provides the plan benefits. It provides, in part:

> *"If some or all of the benefits under the plan are purchased from * * * an insurance company,* * * * a report under this section shall include a statement from such insurance company * * * and enumerating —
>
> "(1) the premium rate or subscription charge and the total premium or subscription charges paid to each such carrier * * * and the approximate number of persons covered by each class of such benefits; and
>
> "(2) the total amount of premiums received, the approximate number of persons covered by each class of benefits, and the total claims paid by such company * * *." (Emphasis added.)

The phrase "[i]f some or all of the benefits under the plan are purchased from * * * an insurance company" is instructive. In drafting this section, Congress recognized

that the only means by which an insurance company can become involved in an employee benefit plan is through the employer's purchase of benefits from that insurance company. Once that purchase has taken place, the insurance company can fulfill the reporting requirements contained in subsections 1023(e)(1) and (2). Without the purchase of benefits, an insurance company has only a potential connection to an employee benefit plan. If no other provider or source of funding exists, an employer could not have "established" a plan under ERISA.

In this case, if PACC had approved employer's application, "all of the benefits under the plan [would have been] purchased from * * * an insurance company." Such a purchase would have been employer's "establishment" of an employee benefit plan and further would have obligated PACC to comply with the reporting requirements contained in 29 USC section 1023(e). However, no purchase of insurance ever took place, because PACC denied employer's application. That fact further supports the conclusion that employer did not "establish" a plan, because the only method by which a plan can exist if an insurance company provides the benefits is through the employer's purchase of those benefits.

■ Nothing in the text or structure of ERISA suggests that the word "established" has more than one plausible meaning or that Congress intended that ERISA should preempt state laws, whether statutory or common law, as they pertain to potential plans. We have found nothing in the legislative history describing the purposes behind ERISA that suggests a different result. From our examination of the relevant federal statutory provisions, it is clear that, in order for an ERISA employee benefit plan to be "established by an employer" through the purchase of insurance, there first must be an agreement between the employer and the provider. Until a provider has an obligation under that agreement to provide benefits to beneficiaries or participants, an employer has not "established" an employee benefit plan.

■ The focus of our inquiry is on the existence of a plan that provides benefits. In this case, such a plan, in fact, did not exist. Because PACC did not approve employer's application, and employer did not provide health coverage to her

employees through any other mechanism, employer did not "establish" an employee benefit plan. Plaintiff's claims, therefore, are not preempted by ERISA.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court for PACC Health Plan, Inc., on summary judgment is reversed, and the case is remanded to that court for further proceedings.